IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Royce Homes, L.P | § | Civil Action 4:11-cv-03700 |
|     Debtor | § | |
| | § | |
| ******************************** | § | |
| | § | |
| Rodney Tow, Trustee | § | |
|     Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| John H. Speer, Amegy Bank, N. A., et al | § | |
|     Defendants | § | |

**Trustee's Reply to Amegy's Response to
Motion to Authorize Filing of Trustee's
Second Amended Complaint**
(Relates to Bankruptcy Adversary Docket No. 206)

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE LEE H. ROSENTHAL:**

Rodney Tow, Trustee/Plaintiff, files this Reply to the Response by Amegy Bank and would show the Court as follows:

**Table of Contents**

I.  Nature and Stage of Proceedings.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Relationship of the Parties Relevant to this Reply. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. Trustee's Complaint is Backed by Testimonial Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  Rule 15(a) Standard for Amendment is Met by the Trustee.. . . . . . . . . . . . . . . . . . . . . . . 4

V.  Amending in MUD 11 as a Defendant is Allowed Under Rule 15. . . . . . . . . . . . . . . . . . . . . . 5

VI.  The "Newly Alleged Transactions" are Neither
       Newly Alleged Nor Barred by Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VII.  The Trustee's Cause of Action Against MUD 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VIII.  Claims of Conversion Withdrawn. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IX.  Trustee is Not Seeking a Turnover Against MUD 11 Pursuant to 11 U.S.C. §542. . . . . . . . . 11

X.  The Bankruptcy Court Found the Trustee has Pled a
      Plausible Fraudulent Transfer Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Table of Authorities**

**Cases**

*Dyll v. Adams*, 167 F.3d 945, 948 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Ginther v. Taub*, 675 S.W.2d 724, 728 (Tex. 1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Pope v. Garrett*, 147 Tex. 18, 25, 211 S.W.2d 559, 562 (1948)... . . . . . . . . . . . . . . . . . . . . . 9, 11

*Sun Life Assur. Co. of Canada v. Dunn*, 134 F. Supp. 2d 827, 835 (S.D. Tex. 2001).. . . . . . . 9, 11

**Statutes**

11 U.S.C. §542.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

11 U.S.C. §546.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Rules**

Fed. R. Civ. P. 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

### I. Nature and Stage of Proceedings

1.  The underlying Adversary Proceeding (Adversary No. 11-3191) was filed on April 28, 2011. After motions to dismiss were filed by the various Defendants, the Trustee amended his complaint to address the issues raised in the motions to dismiss. The Defendants then filed additional motions to dismiss. The Trustee replied to each motion to dismiss, including Amegy's Motion to Dismiss the Amended Complaint. (Bankruptcy Adversary Docket No. 108 and 156). Prior to the withdrawal of the reference, the Bankruptcy Court entered orders relating to each motion to dismiss. The Order relating to the Amegy Motion to Dismiss the Amended Complaint was entered at Bankruptcy Adversary Docket No. 151.

### II. Relationship of the Parties Relevant to this Reply

2.  John Speer (Speer) is the former president and CEO of Royce Homes, L.P., the Debtor in this case. He was also the sole shareholder and an officer of Hammersmith Group, LLC, fka Hammersmith Group, Inc., the former general partner of Royce Homes. At all times relevant to this case Speer was a control person of and fiduciary to Royce Homes and Hammersmith.

3.  Amegy personally loaned Speer $20 million in September 2006 as part of the buyout of his partner, Michael Manners. Royce Homes's assets were used to repay the Amegy loan. Royce Homes was not liable on the note in any capacity.

4.  Amegy and Speer created Vestalia, a Speer controlled company, for the specific purpose of carrying out a fraudulent transfer of the Westwood Gardens assets and to complete this self-dealing transaction. Among the transferred assets were the Westwood Gardens lots and

approximately $2.9 million in MUD Reimbursements. In the Original Complaint and the First Amended Complaint, the Trustee sought an equitable lien and constructive trust against Speer, Amegy and Vestalia relating to the MUD Reimbursements. The Second Amended complaint seeks to extend the equitable lien and constructive trust to the MUD Reimbursements currently held by MUD 11, which are yet to be distributed.[1]

### III. Trustee's Complaint is Backed by Testimonial Evidence

5.  The Second Amended Complaint is 181 pages, backed by 412 pages of testimony by Speer, Michael Manners (a former partner in Royce Homes and control person), Chris Denison (the Amegy Bank representative on the Speer note), and Bill Gathmann (the former CFO of Royce Homes). The testimony is summarized in the Second Amended Complaint. Links from the Complaint to the testimonial excerpts are provided so, when viewed electronically, the reader may easily move from allegation to supporting testimony and back to allegation.

### IV. Rule 15(a) Standard for Amendment is Met by the Trustee

6.  Amegy argues that adding a new defendant, West Harris County Municipal Utility District No. 11 (MUD 11), will create undue delay because MUD 11 will want to be present for depositions and it has not yet been served.[2]

7.  Amegy mixes two different matters in paragraph 12 of its Objection:

    a.  Amegy asserts the Trustee should not be allowed to amend in MUD 11 as a defendant because he knew prior to filing the First Amended Complaint that the MUD Reimbursements were owed.

---

[1] *See* paragraphs 653 to 659 in the Second Amended Complaint.

[2] Amegy Objection, paragraph 11.

    b.     Amegy then asserts the Trustee should not be able to add "newly alleged transactions" which occurred years ago. These transactions do not relate to MUD 11 but instead relate to distributions to Speer.

### V. Amending in MUD 11 as a Defendant is Allowed Under Rule 15

8. Adding MUD 11 to this case will not create undue delay. No Scheduling Order has been entered by this Court. Since the filing of the Adversary Proceeding or this Civil Action, no discovery has been commenced and no depositions have been scheduled. Now is the time to add MUD 11 because it may want to be present for depositions or it may simply seek to interplead these funds.

9. In fact, the constructive trust/equitable lien claims were in the Original Complaint[3] and in the First Amended Complaint.[4] The Trustee is seeking to add MUD 11 because the Trustee recently learned that some MUD Reimbursements relating to Westwood Gardens had been distributed and that another $1 million in reimbursements were soon to be distributed. If these reimbursements are distributed, the funds will benefit fraudsters: Amegy, Speer and Vestalia. In its Order at Bankruptcy Adversary Docket No. 200, the Bankruptcy Court analyzed the Trustee's allegations of fraud against Amegy, Speer, and Vestalia:

> *In the Amended Complaint, in paragraphs 262 through 286, the Trustee alleges, with good detail, that Amegy, Speer, Park Lake and Vestalia formulated and carried out a plan to transfer Westwood Gardens from Park Lake to a new company created expressly for that purpose (i.e. Vestalia), so that Speer could pay off his personal loan to Amegy. [Adv. Doc. No. 89, paragraphs 266-86]. The Trustee also alleges, through attaching the transcript of certain testimony, deliberate dishonesty on the part of these particular defendants in concocting a scheme to use Park Lake's assets*

---

[3]Original Complaint, paragraphs 586-88.

[4]First Amended Complaint, paragraphs 641-43.

> *to pay off Speer's personal obligations to Amegy, instead of using these assets to pay Park Lake's legitimate creditors (such as Royce Homes). Indeed, the Trustee alleges, by attaching the transcript of certain testimony, that these defendants were aware that the Transfer would be problematic when Royce Homes filed for bankruptcy. (Adv. Doc. No. 89, Denison Excerpt 74]. These allegations, if taken as true, demonstrate a deliberate intent of Amegy, Speer, Park Lake, and Vestalia to defraud Park Lake's creditors; instead of paying off Park Lake's debts, the defendants purposefully conspired to transfer a $6.77 million asset with substantial equity (i.e. Westwood Gardens) to Vestalia so that Speer could use this equity to pay off his personal loan to Amegy.[5]*

10. There is no undue delay. It is not prejudicial to allow the filing of the Second Amended Complaint. These claims do not come as a surprise to any party to this litigation in that the claims were set forth in the Original Complaint and the First Amended Complaint. The only surprise for Amegy, Speer, and Vestalia is the Trustee may now capture $1 million that they fraudulent stripped from Royce Homes. FED. R. CIV. P. 15(a)(2) instructs that the Court should freely give leave to amend when justice so requires. In this instance, justice requires the preservation of assets that should go to Royce Homes for payment of its creditors.

### VI. The "Newly Alleged Transactions" are Neither Newly Alleged Nor Barred by Limitations

11. Amegy argues that the Trustee is alleging "new" claims in the Second Amended Complaint and that such claims are raised after the expiration of the statute of limitations under §546(c). Amegy argues the payments to Speer, described in paragraph 180 of the Second Amended Complaint, are "*new* transfers." However, the claim relating to these transfers can be found in the Original Complaint and the First Amended Complaint. The Second Amended Complaint provides more detail relating to these transfers.

---

[5] *See* Order Granting Trustee's Motion to Reconsider Order Granting In Part and Denying In Part Vestalia, LLC's Motion To Dismiss the Trustee's Amended Complaint (Bankruptcy Adversary Docket No. 200, page 14)

12. Paragraph 172 of the Original Complaint, under the section titled "Other Speer Distributions/Payments," the Trustee's claim stated:

    *For example, beginning in October 2006, Speer distributed $300,000 per month to himself in addition to his salary.*

13. In paragraph 181 of the First Amended Complaint, under the section titled "Other Speer Distributions/Payments," the Trustee's claim alleged the same payments but provided more detail:

    *For example, beginning in October 2006, Speer distributed money to himself in addition to his salary. These distributions were from accounts of Royce Homes and include but are not limited to:*

    | *Date* | *Check Number* | *Amount* |
    |---|---|---|
    | *1/2/07* | *94724* | *$150,000* |
    | *2/1/07* | *93458458* | *$150,000* |
    | *3/1/07* | *94529* | *$150,000* |
    | *4/2/07* | *3056* | *$150,000* |
    | *5/1/07* | *5066* | *$150,000* |
    | *6/1/07* | *7134* | *$150,000* |
    | *7/2/07* | *8958* | *$150,000* |

14. Finally, in paragraph 180 of the Second Amended Complaint, under the section titled "Other Speer Distributions/Payments," the Trustee's claim still alleged the same payments but provided even more detail:

    *For example, beginning in September 2006, Speer distributed money to himself in addition to his salary. These distributions were from accounts of Royce Homes and include but are not limited to:*

    | *Date Issued* | *Date Dep.* | *Check No* | *Amount* | *Account* |
    |---|---|---|---|---|
    | *09/01/06* | *09/01/06* | *85428* | *150,000.00* | *Royce Homes* |
    | *10/02/06* | *10/06/06* | *87368* | *150,000.00* | *Royce Homes* |
    | *10/31/06* | *10/31/06* | *9308* | *227,248.60* | *Royce Homes* |
    | *11/01/06* | *11/06/06* | *89556* | *150,000.00* | *Royce Homes* |
    | *12/01/06* | *12/01/06* | *92245* | *150,000.00* | *Royce Homes* |
    | *01/02/07* | *01/04/07* | *94724* | *150,000.00* | *Royce Homes* |
    | *02/01/07* | *02/02/07* | *93458* | *150,000.00* | *Royce Homes* |
    | *03/01/07* | *03/13/07* | *94529* | *150,000.00* | *Royce Homes* |

| | | | | |
|---|---|---|---|---|
| *04/02/07* | *04/04/07* | *03056* | *150,000.00* | *Royce Homes* |
| *05/01/07* | *05/01/07* | *05066* | *150,000.00* | *Royce Homes* |
| *07/02/07* | *07/05/07* | *08963* | *150,000.00* | *Royce Homes* |
| *08/01/07* | *08/06/07* | *01407* | *150,000.00* | *Royce Homes* |
| *09/04/07* | *09/04/07* | *12996* | *150,000.00* | *Royce Homes* |
| *10/01/07* | *10/02/07* | *14690* | *150,000.00* | *Royce Homes* |
| *11/01/07* | *11/02/07* | *4819* | *150,000.00* | *Royce Homes* |
| *12/03/07* | *12/04/07* | *18113* | *150,000.00* | *Royce Homes* |
| *12/07/07* | *12/11/07* | *18469* | *156,428.00* | *Royce Homes* |
| *01/02/08* | *01/04/08* | *6310* | *150,000.00* | *Royce Homes* |

15. The additional detail simply provided specificity of the previously stated claim by providing the check date, date deposited, check number, amount and the account holder's name. These payments do not represent new claims but simply provide more detail on the original claim. These payments arise out of the same conduct, transactions, or occurrences set out, or attempted to be set out, in the Original Complaint.[6]

### VII. The Trustee's Cause of Action Against MUD 11

16. Amegy argues that the Trustee's claim against MUD 11 does not satisfy the pleading standards in that the Trustee has not pled a "short and plain statement that shows entitlement to the relief sought against [MUD 11]. The premise of Amegy's argument is that MUD 11 is not a wrongdoer.

17. Amegy, Speer and Vestalia are the wrongdoers. The Trustee's original claim was against each of them. MUD 11 is not a wrongdoer but it holds money which it intends to turn over to the wrongdoers–Amegy, Speer and Vestalia. The Trustee's Complaint seeks to capture

---

[6] Fed. R. Civ. P. 15(c)(1)(B)

funds which MUD 11 will distribute to Amegy, Speer and Vestalia. Under Texas law, courts may "impose a constructive trust on totally innocent beneficiaries of a wrongful act."[7]

18. The three elements required to be met when applying the equitable remedy of a constructive trust are: (1) breach of an informal relationship of special trust or confidence arising prior to and apart from the transaction in question, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable *res*.

19. Speer was a fiduciary to Royce Homes, Park Lake, and Park Lake's creditors. He had a fiduciary duty to pay the creditors of Park Lake when Park Lake became insolvent. It is undisputed that Park Lake was insolvent and that Royce Homes was a creditor of Park Lake during the relevant time frame.[8] It is also undisputed that Park Lake had significant equity in the Westwood Gardens lots and the MUD Reimbursement.[9] The transfer of Westwood Gardens and the MUD Reimbursements was a breach of Speer's fiduciary duty. Amegy and Vestalia aided and abetted Speer's breach of fiduciary duty. All three colluded in this fraudulent scheme to take these assets for themselves to the detriment of legitimate creditors.

20. As a result of this fraudulent scheme by Speer, Amegy, and Vestalia, they now hold the apparent legal right to receive the payment of the MUD Reimbursements despite the fact that Park Lake's creditors, including Royce Homes, have an equitable interest in those assets.

---

[7] *See Sun Life Assur. Co. of Canada v. Dunn*, 134 F. Supp. 2d 827, 835 (S.D. Tex. 2001)(holding that a divorce decree granted ex-wife a legal interest in an insurance policy's proceeds, that the right to receive the policy proceeds was a property interest, and were sufficient to satisfy the traceable res requirement for a constructive trust even against a "totally innocent" beneficiary)(citing *Dyll v. Adams*, 167 F.3d 945, 948 (5th Cir. 1999)). *See also*, *Ginther v. Taub*, 675 S.W.2d 724, 728 (Tex. 1984); *Pope v. Garrett*, 147 Tex. 18, 25, 211 S.W.2d 559, 562 (1948).

[8] *See* Second Amended Complaint at para. 263 to 273, 495-498.

[9] *See* Second Amended Complaint at para. 262 to 287.

21. The Trustee's Second Amended Complaint sets forth a plausible claim that the Westwood Gardens transfer was fraudulent and constitutes a breach of fiduciary duty by Speer who was aided and abetted by Vestalia and Amegy. The Trustee's Second Amended Complaint states a plausible claim which shows that the transfer of the right to receive the MUD Reimbursements in connection with the Westwood Gardens transaction constitutes fraud. The Trustee seeks to set aside these transfers as a fraudulent conveyance. Therefore, the Trustee has presented sufficient facts and evidence on the first element to establish a constructive trust.[10]

22. If Speer, Amegy and Vestalia were to receive the MUD Reimbursments, they would benefit from their bad acts. In other words, Speer, Vestalia and Amegy would be unjustly enriched.

23. The funds in the hands of MUD 11 are the proceeds of the fraud of Speer, Amegy and Vestalia. Although MUD 11 did not participate in the fraud or the breach of fiduciary duty, the Trustee seeks the imposition of a constructive trust on MUD 11 to prevent the enrichment of the fraudsters: Speer, Amegy and Vestalia. As a constructive trust can be imposed against a totally innocent beneficiary, the Trustee is seeking imposition of a trust against MUD 11 to capture funds that would otherwise go to wrongdoers.

24. Further, these proceeds are traceable to the actual fraudulent acts committed by Speer, Amegy and Vestalia. In the Trustee's Second Amended Complaint, paragraphs 262 to 287, the Trustee has set forth in detail the fraud committed by Speer, Amegy and Vestalia in the Westwood Gardens transaction. These allegations are supported by testimony from Speer

---

[10] *See* Order Granting Trustee's Motion to Reconsider Order Granting In Part and Denying In Part Vestalia, LLC's Motion To Dismiss the Trustee's Amended Complaint (Bankruptcy Adversary Docket No. 200, page 14).

and the Amegy Bank representative, Chris Denison.

25. The MUD Reimbursements were contractually owed from MUD 11 to Park Lake. The Second Amended Complaint traces the right to receive the MUD Reimbursements out of Park Lake and into the hands of Speer, Amegy and Vestalia. The MUD Reimbursement are a traceable *res*, based on a contractual right, satisfying the third element of a constructive trust.[11]

### VIII. Claims of Conversion Withdrawn

26. On October 4, 2011, the Bankruptcy Court entered its order granting in part and denying in part John Speer's Motion to Dismiss (Bankruptcy Adversary Docket No. 194) the First Amended Complaint. The Order asked the Trustee to make an election to accept or dispute the dismissal of the conversion action.

27. On October 26, 2011, in response to the Bankruptcy Court's order, the Trustee filed the "Trustee's Election Under the Court's Order Denying in part and Granting in Part Defendant John H. Speer's Motion to Dismiss" (Bankruptcy Adversary Docket No. 209). The Trustee elected to not dispute the dismissal of the conversion claim and dropped the conversion claim against all parties.

28. The issues raised by Amegy relating to the conversion claim is now moot.

### IX. Trustee is Not Seeking a Turnover Against MUD 11 Pursuant to 11 U.S.C. §542

29. The Trustee is seeking a constructive trust and equitable lien against the MUD Reimbursements. The use of the words "turned over" in paragraph 659 of the Second

---

[11]*See Sun Life Assur. Co. of Canada v. Dunn*, 134 F. Supp. 2d 827, 835 (S.D. Tex. 2001); *Dyll v. Adams*, 167 F.3d 945, 948 (5th Cir. 1999). See also, *Ginther v. Taub*, 675 S.W.2d 724, 728 (Tex. 1984) and *Pope v. Garrett*, 147 Tex. 18, 25, 211 S.W.2d 559, 562 (1948).

        Amended Complaint was intended to be a reference to having the MUD Reimbursements turned over to the Trustee, in execution of a judgment, after judgment is entered finding the MUD Reimbursements were fraudulently transferred or were transferred in breach of Speer's fiduciary duty.

30.   Since the Trustee is not seeking turnover of the MUD Reimbursements pursuant to 11 U.S.C. §542, the Trustee need not respond to paragraphs 25 to 31 of Amegy's Objection.

### X. The Bankruptcy Court Found the Trustee has Pled a Plausible Fraudulent Transfer Claim

31.   Amegy argues in its Objection that an amendment to the Complaint would be futile because the Trustee has not pled a plausible fraudulent transfer claim as it relates to the Westwood Gardens transaction. Amegy argues that because it had a lien on Westwood Gardens and conducted a foreclosure sale, that the Westwood Gardens transaction is somehow legitimate. What Amegy conveniently fails to mention is that the Westwood Gardens transaction is one in which Amegy, Vestalia and Speer conspired to conduct a collusive sham foreclosure through which they diverted millions of dollars from a Royce Homes affiliate to pay the personal obligations of Speer. The Westwood Gardens transaction is described in detail at paragraphs 262 to 287 of the proposed Second Amended Complaint.

32.   Amegy, Vestalia, and Speer conspired to conduct a sham foreclosure in order to give the Westwood Gardens transaction the appearance of legitimacy. The Westwood Gardens conspirators structured the transaction through a foreclosure sale in an attempt to rinse the fraudulent transfer through the foreclosure sale process. The Trustee pled that the foreclosure sale was collusive and therefore no presumption of reasonably equivalent value arises, notwithstanding Amegy's lien. There was substantial equity in Westwood Gardens

that should have been used for the benefit of Royce Homes.  Instead, Amegy helped Speer and Vestalia to strip out all the value to satisfy Speer's personal obligations to Amegy.

33. Amegy argues that the Trustee has not pled a plausible fraudulent transfer claim as to the Westwood Gardens transaction - yet the Bankruptcy Court has already decided that the Trustee has pled a plausible claim.[12]

34. Amegy filed a Motion to Dismiss at Bankruptcy Adversary Docket No. 108. The Bankruptcy Court denied Amegy's Motion to Dismiss at Bankruptcy Adversary Docket No. 151. In its Motion to Dismiss, Amegy did not even address the claims against Amegy, Vestalia and Speer in connection with the Westwood Gardens fraudulent transaction. Amegy has had ample opportunity to raise this issue and has chosen to remain silent. This issue has been fully briefed and argued in the Bankruptcy Court and the Bankruptcy Court rejected the position Amegy is now taking in its Objection.[13]

35. On October 13, 2011, the Bankruptcy Court found that the Trustee pled a plausible fraudulent transfer against Vestalia, Amegy, and Speer as it relates to the Westwood Gardens transaction.[14]  Amegy, who remained silent during the motion to dismiss phase, now seeks a second bite at the apple.

36. The Bankruptcy Court has already expended substantial resources addressing the issues raised by Amegy in its Objection and ruled against the position Amegy is now taking. To allow Amegy to lay in wait while the other parties expend substantial time and effort

---

[12]*See* Order Granting Motion for Reconsideration at Bankrutpcy Adversary Docket No. 200.

[13]The Trustee incorporates by reference the Motion to Reconsider at Bankruptcy Adversary Docket No. 184.

[14]*See* Order Granting Motion for Reconsideration at Bankruptcy Adversary Docket No. 200.

litigating an issue - only to raise it again in a different procedural context - should not be permitted.

37. As already decided by the Bankruptcy Court, the Trustee has pled plausible claims against Amegy, Vestalia, and Speer relating to the Westwood Gardens transaction. The Trustee's claims as it relates to the Westwood Gardens transaction are not futile and the amendment to the Second Amended Complaint should be permitted.

### Prayer

Based on the foregoing, the Trustee requests the Court to authorize the filing of the Second Amended Complaint and grant such other and further relief as is just.

Respectfully submitted this 21st day of November 2011.

        **CAGE HILL & NIEHAUS, LLP**
        By:/s/ Michael Duncan
        Michael Duncan
        Texas Bar No. 06218700
        Cage, Hill & Niehaus, L.L.P.
        5851 San Felipe, Suite 950
        Houston, TX 77057
        Telephone:  (713) 789-0500
        Telecopier:  (713) 974-0344


        **JONES MORRIS KLEVENHAGEN, LLP**
        By:/s/ Erin E. Jones
        Erin E. Jones
        Texas Bar No. 24032478
        Jones Morris Klevenhagen, LLP
        6363 Woodway Suite 570
        Houston, TX 77057
        Telephone:  (713) 589-5061
        Telecopier:  (713) 589-5513

        **TOW & KOENIG, PLLC**

>By: /s/ Julie Koenig
>Julie Koenig
>Texas Bar No. 14217300
>Rodney Tow
>Texas Bar No. 20152500
>Fed. Id: 3196
>26219 Oak Ridge Drive
>The Woodlands, TX 77380
>Telephone:  (281) 681-9100
>Telecopier:  (832) 482-3979
>
>**COUNSEL FOR RODNEY TOW, CHAPTER 7 TRUSTEE FOR THE ESTATE OF ROYCE HOMES, L.P.**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served via first class U.S. Mail to those listed below and by ECF/PACER to those registered to receive such service on this 21st day of November 2011.

>/s/ Erin E. Jones

| | |
|---|---|
| George R Gibson<br>Nathan Sommers Jacobs PC<br>2800 Post Oak Blvd,<br>61st Flr<br>Houston, TX 77056-6102<br>**COUNSEL FOR AMEGY BANK, N.A., AMEGY MORTGAGE COMPANY, LLC** | C Ed Harrell<br>Steven Douglas Shurn<br>Hughes Watters & Askanase<br>Three Allen Center<br>333 Clay, 29th Floor<br>Houston, TX 77002<br>**COUNSEL FOR JOHN H. SPEER, VESTALIA, LLC** |
| Christopher Donald Johnson<br>McKool Smith P.C.<br>600 Travis St.<br>Suite 7000<br>Houston, TX 77002<br>**COUNSEL FOR DONNIE LOU SPEER** | Randall A. Rios<br>Timothy Million<br>Munsch Hardt Kopf & Harr P.C.<br>700 Louisiana, 46th Floor<br>Houston, TX 77002<br>**COUNSEL FOR HAMMERSMITH GROUP, LLC, PARK LAKE COMMUNITIES** |

| | |
|---|---|
| Marc J. Magids<br>David Martin<br>Zukowski, Bresenhan & Sinex, L.L.P.<br>1177 West Loop South Suite 1100<br>Houston, TX 77027<br>**COUNSEL FOR GEORGE KOPECKY, WATERMARK LAND LLC, WATERMARK TORTUGA, LLC** | Randall A. Rios<br>Timothy Million<br>Munsch Hardt Kopf & Harr P.C.<br>700 Louisiana, 46th Floor<br>Houston, TX 77002<br>**COUNSEL FOR HAMMERSMITH GROUP, LLC, PARK LAKE COMMUNITIES** |
| Peter Johnson<br>Law Offices of Peter Johnson<br>Eleven Greenway Plaza Suite 2820<br>Houston, TX 77046<br>**COUNSEL FOR MICHAEL MANNERS, ALLARD INVESTMENT COMPANY, LLC, DMW HOLDINGS, INC., MGM MOTOR SPORTS, LLC, SARACEN HOLDINGS, INC.** | |