CIVIL ACTION NO. 4:11-CV-03700

# In the United States District Court
# for the Southern District of Texas
# Houston Division

_____

RODNEY TOW, TRUSTEE,

PLAINTIFF,

**vs.**

JOHN H. SPEER, ET AL,

DEFENDANTS.

_____

## BRIEF IN SUPPORT OF MOTION TO DISMISS CERTAIN CLAIMS
## AND/OR FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN CLAIMS

_____

WILLIAM C. FEREBEE
Texas SBN 06907500
450 Gears Road - Eighth Floor
Houston, Texas 77067
Telephone: (281) 875-8200
Telecopier: (281) 875-4962
wferebee@ofmklaw.com

ATTORNEY-IN-CHARGE FOR
MICHAEL G. MANNERS

EUGENE B. WILSHIRE
Texas SBN 21665500
3840 One Houston Center
1221 McKinney Street
Houston, Texas 77010
Telephone: (713) 651-1221
Telecopier: (713) 651-0020
ewilshire@wilshirescott.com

ATTORNEY IN CHARGE FOR
MANNERS RELATED DEFENDANTS

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
III.    SUMMARY OF THE BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
IV.     THE CLAIMS ADDRESSED IN THIS MOTION . . . . . . . . . . . . . . . . . . . . . . 4
V.      SUMMARY JUDGMENT EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
VI.     FACT STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        A.   A Short History of Royce . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        B.   Speer's Purchase of Manners' Remaining Interests . . . . . . . . . . . . . . . . . . 6
VII.    ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        A.   Motions to Dismiss Under Federal Rule 126(b)(6) (Standard of Review) . . . . . . 8
        B.   Motions for Summary Judgment Under Federal Rule 56 (Standard of Review) . 9
        C.   Choice of Law Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        D.   At No Material Time was Manners a Fiduciary of Royce . . . . . . . . . . . . . . 11
             1.   Tow Fails to State a Claim that Manners was a Fiduciary of Royce. . . . . 11
                  a.   Chairman Emeritus was merely a title and nothing else. . . . . . . . 11
                  b.   Manners status of an "employee" conferred no fiduciary duties. . 13
                  c.   Tow has failed to state a claim that Manners was a fiduciary of
                       Royce . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
             2.   Tow has no evidence to support his claim that Manners was a fiduciary
                  of Royce. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
             3.   Tow has no Evidence Manners Owed Fiduciary Duties to Royce
                  Creditors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        E.   Manners and the Manners' Companies have no Secondary Liability . . . . . . . . 16
             1.   Tow fails to state a claim for secondary liability . . . . . . . . . . . . . . . 16
             2.   The same result is mandated under Rule 56 of the Federal Rules of
                  Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        F.   Tow has no Tort Claims Against Manners or Manners' Companies . . . . . . . . . 17
             1.   Royce Ratified all claims for Fiduciary Breach . . . . . . . . . . . . . . . 18
             2.   Royce's Ratification of Speer's Acts Defeats any Claim for Secondary
                  Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        G.   The Same Result Obtains Under *In Pari Delicto* Analysis. . . . . . . . . . . . . . 20
        H.   Tow has No Claim based on Senior Debt . . . . . . . . . . . . . . . . . . . . . . . 21
                  a.   Tow does not own the "Senior Debt" claims arising under the
                       Manners' Note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        I.   Tow can Produce No Evidence the Allard Sales were at a Below Market Price . 22
        J.   Tow has No Evidence Manners Committed Theft, is liable for Money Had an
             Received or Converted Any of Royce's Property . . . . . . . . . . . . . . . . . . . 22

i

      a.    Receiving payment on a debt is not theft . . . . . . . . . . . . . . . . . 23

      b.    There is no liability for conversion . . . . . . . . . . . . . . . . . . . . . . 23

      c.    Tow does not plead or have evidence to support unjust enrichment claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

INDEX OF APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

I<span>NDEX OF</span> A<span>UTHORITIES</span>

## <u>C<small>ASES</small></u>

*Akin v. Dahl,*
  661 S.W.2d 917 (Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Amcast Indus. Corp.,*
  365 B.R. 91 (Bankr. S.D. Ohio 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*American Home Assurance Co. v. Safeway Steel Products Co., Inc.,*
  743 S.W.2d 693 (Tex. App. -Austin 1987, writ denied). . . . . . . . . . . . . . . . . . . . . . 10, 11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*ASSARCO LLC v. Americas Mining Corp.,*
  382 B.R. 49 (S.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Bell Atlantic Corp. v. Twombly,*
  550 U.W. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Bennett Funding Group, Inc.,*
  336 F.3d 94 (2nd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Bobby Smith Brokerage, Inc. v. Bones,*
  741 S.W.2d 621 (Tex. App. - Ft. Worth 1987, no writ). . . . . . . . . . . . . . . . . . . . . . 23, 24

*Bond Purchase L.L.C. v. Patriot Tax Credit Properties, L.P.,*
  746 A.2d 842 (Del. Ch. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Brentwood Lexford Partners, LLC,*
  292 B.R. 255 (Bankr. N.D. Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Canion v. Texas Cycle Supply, Inc.,*
  537 S.W.2d 510 (Tex. Civ. App. -Austin 1976, writ ref'd d n.r.e.). . . . . . . . . . . . . . . .19

*Celotex Corp. v. Catlett,*
  477 U.S. 322-323 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Committee of Unsecured Creditors v. Doemling,*
  127 B.R. 945 (W.D. Pa. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

iii

*CML V, L.L.C. v. Bax,*
    16 A.3d 238 (Del. Ch. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

*Deaton v. United Mobile Networks, L.P.,*
    926 S.W.2d 756 (Tex. App. - Texarkana 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*DeSaints v. Wackenhut Corp.,*
    793 S.W.2d 670 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Duncan v. Cessna Aircraft Co.,*
    665 S.W.2d 414 (Tex. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Eckert v. Eckert,*
    182 NYS2d 600 (N.Y. Sup. Ct. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Eckman v. Centennial Sav. Bank,*
    757 S.W.2d 392 (Tex. App. - Dallas 1988, writ denied) . . . . . . . . . . . . . . . . . . . . . . . .24

*Enron Securities Derivative & "ERISA" Litigation,*
    511 F. Supp.2d 742 (S.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.,*
    51 S.W.3d 573 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*F.D.I.C. v. Ernst & Young,*
    967 F.2d 166 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Fontenot v. The Upjohn Company,*
    780 F.2d 1190 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 17

*Gropper v. N. Central Tex. Oil Co.,*
    114 A.2d 231 (De. Ch. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*JA Apparel Corp. v. Abboud,*
    568 F.3d 290 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Johnson v. Brewer & Pritchard, P.C.,*
    73 S.W.2d 193 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Lewis v. Playboy Enterprises, Inc.,*
    664 NE.2d 133 (I11. App. Ct. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mann v. GTCR Golden Rauner, LLC,*
    482 F. Suppl.2d 884 (D. Ariz. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Matagorda County v. Texas Ass'n of Counties Governmental Risk Mgmt Pool,*
    975 S.W.2d 782 (Tex. App. - Corpus Christi 1998). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Matsushita Elec. Indus. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Mediators, Inc.,*
    1996 U.S. Dist. LEXIS 7639. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Monahan Ford Corp. Of Flusing,*
    340 B.R. 1 (Bankr. S.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Nanovation Technologies, Inc.,*
    364 B.R. 308 (Bankr. N.D. I11. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Newsome v. Charter Bank Colonial,*
    940 S.W.2d 157 (Tex. App. - Houston 1966, writ denied).  . . . . . . . . . . . . . . . . . . . . .24

*Official Comm. Of Unsecured Creditors v. R. F. Lafferty & Co., Inc.,*
    267 F.3d 340 (3rd Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Pride International, Inc. v. Bragg,*
    259 S.W.2d 839-848 (Tex. App. - Houston [1[st] Dist.] 2008, no pet). . . . . . . . . . . . . . . .9

*Rodriguez v. U.S. Security Associates, Inc.,*
    162 S.W.3d 868 (Tex. App. - Houston [14[th] Dist.] 2005, no pet.). . . . . . . . . . . . . . . . .23

*Safety Intern., Inc.,*
    775 F.2d 660 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 19

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,*
    435 S.W.2d 854 (Tex. 1968. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

*Seven Seas Petroleum, Inc.,*
    522 F.3d 575 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 22

*Shearson Lehman Hutton, Inc. v. Wagoner,*
    944 F.2d 114 (2nd Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Snavely v. C.I.R.,*
    67 T.C.H. (CCH) 3056 (T.C. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Sommers Drug Stores Co. Empl. Profit Sharing Trust v. Corrigan,*
    883 F.2d 345 (5ᵗʰ Cir. 1989), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Stodghill v. Serv. Employees' Intern,. Union Local 50,*
    13 F. Supp.2d 960 (E.D. Mo. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

*Taylor Pipeline Const., Inc. v. Directional Road Boring, Inc.,*
    348 F. Suppl.2d 696 (E.D. Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Thigpen v. Locke,*
    363 S.W.2d 247 (Tex. 1944). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tuffs Electronics, Inc.,*
    746 F.2d 915 (1ˢᵗ Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Wight v. Bank America Group,*
    219 F.3d 79 (2ⁿᵈ Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## Sᴛᴀᴛᴜᴛᴇs ᴀɴᴅ ʀᴜʟᴇs

BLACK'S LAW DICTIONARY at 753 (4ᵗʰ Ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

COLLIER ON BANKRUPTCY ¶ 323.03[2] (15ᵀᴴ rev. ed.2001). . . . . . . . . . . . . . . . . . . . . .22

DEL. CODE ANN. tit. 6 § 17-1002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16
DEL. CODE ANN. tit. 6 § 17-303(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15
DEL. CODE. ANN tit. 8 § 144(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

FED. R. Civ. P. 56 (c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

MINN. STAT. ANN § 147E.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

S.C. CODE ANN. § 40-22-20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11 U.S.C. §§ 544 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

To the Honorable Lee Rosenthal, United States District Judge:

Come Now Michael G. Manners ("Manners"), Allard Investment Company, LLC ("Allard"), DWM Holdings GP, LLC and, DWM Holdings, L.P., (collectively "DWM"), MGM Motor Sports, LLC (MGM), Saracen Holdings, Inc., Saracen Holdings, L.P. and Saracen Holdings GP, L.L.C. (collectively "Saracen")[1] and present their Brief in Support of Motion to Dismiss Certain Claims and/or for Partial Summary Judgment as to Certain Claims ("this Motion") respectfully showing:

## I. Statement of the Case

In this adversary proceeding  Rodney Tow ("Tow"), trustee of the Royce Homes L.P. bankruptcy estate has alleged numerous tort claims against Manners and the Manners Companies.

## II. Statement of the Issues

The issues posed by this Motion are as follows:

- Whether Tow has stated claims upon which relief can be granted as to fiduciary breach of any duty Manners or any Manners Company owed to Royce Homes, L.P.;

- Whether Tow has any evidence to raise a fiduciary duty on the part of Manners or any Manners Company to Royce Homes, L.P. ("Royce");

- Whether Tow has stated claims upon which relief can be granted as to alleged secondary liability on the part of Manners or any Manners Company;

- Whether Tow has any evidence that raises a genuine issue of fact regarding secondary liability on the part of Manners or any Manners Company;

- Whether ratification by Royce extinguished all potential claims for fiduciary breach;

- Whether the doctrine of *in pari delicto* extinguished all potential claims for fiduciary breach;

---

[1] The Manners Related Defendants will sometimes be referred to collectively in this Brief as the "Manners Companies" or "Manners Company."

1

- Whether there is any evidence of impropriety relating to fifty homes purchased by Allard in bulk from Royce; and

- Whether there is any evidence Manners or any Manners Company committed civil theft, is liable for money had and received or converted any property of Royce.

### III. SUMMARY OF THE BRIEF

Tow has now filed his Third Amended Complaint ("3rd Complaint").  Although the new complaint is thicker than an unabridged dictionary, the controlling facts as to the myriad of claims against Manners and the Manners Companies are few and, for the most part, indisputable.

In 1998, Manners, DWM and Saracen, then the owners of 100% of Royce's equity, sold 50% of that equity to two companies wholly owned by John H. Speer ("Speer").  In practical terms, Manners and Speer owned Royce as 50/50 partners, but, as part of that sale, Manners formally surrendered all managerial control of Royce to Speer by allowing one of the Speer controlled entities to be Royce's general partner.  After that sale, Manners, vacated his office, surrendered all Royce related responsibilities and became, essentially, a passive investor, vacated his office and stopped even coming to the Royce offices.

In September 2006, Manners agreed to sell all of the remaining interest he held, directly and indirectly, in Royce to Speer for approximately $33,300,000.  Manners, DWM and Saracen were paid $20,000,000 at closing and Speer executed a $13,300,000 subordinated promissory note to Manners, DWM and Saracen (the "Manners Note") for the remainder of the sale price.  The amount of individual payments on the Manners Note was tied to Royce's commencement of home construction and the closing of the sale of those homes; provided, however, the note precluded any payments by Speer during any period of time that Royce was in default to any of its lenders.  Speer obtained the $20,000,000 cash payment by a personal loan from Amegy Bank, N.A. ("Amegy").

Tow's basic claims, though arrayed in a kaleidoscope of causes action, are (i) that Manners breached his fiduciary duty to Royce by selling his interest to Speer, and, although having no interest in Royce after the sale, somehow remained a fiduciary; (ii), in the alternative, the contention with respect to several causes of action is that Manners and the Manners Companies conspired with Speer to have Speer breach his fiduciary duties to Royce or aided and abetted Speer in his breaches or acted in concert with Speer in connection with the breaches;[2] and (iii) a trust fund claim against Manners, DWM and Saracen based upon the subordination provisions in the Manners Note.

These Defendants' responses are simple and dispositive. First, at no material time was Manners a fiduciary of Royce and the 3rd Complaint contains no allegations of fact that even suggest that he was. From 1998 through the first nine months of 2006 Manners was merely a passive, limited partner equity owner in Royce. After the sale of his interests to Speer in September 2006, he and the Manners Companies were simply creditors of Speer.[3] Second, if Speer or anyone else breached any duty to Royce, the partnership ratified those acts, and, therefore, there are no actionable breaches of fiduciary duty. The same result can be reached using *in pari delicto* analysis. Finally, Tow has absolutely no standing of any sort to bring "trust fund" claims against Manners, DWM and Saracen based upon the subordination provisions found in of the Manners Note. If any such causes of action exist, they are the property of Royce's lenders and not of the Royce bankruptcy estate.

---

[2] Tow never labels the "conspiracy, aiding and abetting or acting in concert," all secondary liability claims, as brought in the alternative, but that must be the case. If Manners was a Royce fiduciary, he cannot have secondary liability. *Mann v. GTCR Golden Rauner, L.L.C.*, 483 F. Supp. 2d 884, 916 (D. Ariz. 2007) (one owing fiduciary duty to company cannot aid and abet); *In re Amcast Indus. Corp.*, 365 B.R. 91, 112-113 (Bankr. S.D. Ohio 2007) (secondarily liable party must not be a fiduciary);

[3] In its order dismissing Speer's attempt to appeal a ruling on privilege by the bankruptcy court, this Court referred to Speer as the "sole owner" of Royce. Memorandum & Order; C.A.-11-1069; *John H. Speer v. Chapter 7 Trustee Rodney D. Tow*, dated 01/20/2012 at 1.

## IV.  THE CLAIMS ADDRESSED IN THIS MOTION

Exactly what causes of action Tow is alleging against any defendant is difficult to determine, but Manners and the Manners Companies, by comparing allegations, causes of action and the prayer conclude that the claims against them include the following that are addressed in this Motion –

• Manners is sued on every claim asserted in the 3rd Complaint that alleges fiduciary breach; *E.g.* 3rd Complaint at 47;

• Manners is sued, presumably in the alternative, on every claim asserted in the 3rd Complaint for "conspiracy, aiding and abetting, and acting in concert" with respect to all breaches of fiduciary duty and collateral claims such as unjust enrichment; 3rd Complaint at 47;

• Allard and Manners are alleged to have secondary liability with respect to Allard's bull purchase of approximately fifty homes from Royce; 3rd Complaint at 77-79;

• Manners and some of the Manners Companies are alleged to have stolen, unjustly obtained and/or converted Royce funds; 3rd Complaint at 88-95; and

• Manners, DWM and Saracen are alleged to be liable for all amounts received after September 30, 2006 on the basis of the subordination provisions of the Manners Note (the "trust claims"); 3rd Complaint at 108-113;

In sum, this Motion seeks dismissal and/or summary judgment on all claims brought against Manners, Allard, DWM, Saracen and MGM other than the claims based on alleged fraudulent transfers. *See* 3rd Complaint at 115-167.

## V.  SUMMARY JUDGMENT EVIDENCE

Insofar as this Motion seeks summary judgment, it is supported by the following summary judgment evidence:

The affidavit of Michael G. Manners ("Manners Aff. ¶ __");

The affidavit of Marc Schwartz ("Schwartz Aff. ¶ __");

Excerpts from the deposition of Pamela Mitchell ("Mitchell Depo at __") and Mitchell deposition exhibit, Exhibit A to this Motion;

Interest Purchase Agreement dated September 20, 2006 ("Purchase Agreement") ("Exhibit B")

The Manners Note ("Exhibit C");

Manners Resignation from all Royce Entities ("Exhibit D");

Royce Financial Statements for year-ends 2004 and 2005 ("Exhibit E");

Royce Financial Statement for year-ends 2005 and 2006 ("Exhibit F");

Royce Financial Statement for year-end 2007 ("Exhibit G");

Intercreditor Agreement dated September 20, 2006 ("Exhibit H");

Lender Consents to Speer's purchase of Manners' interests in Royce ("Exhibit I");

Royce Agreement of Limited Partnership ("Exhibit J");

## VI. FACT STATEMENT

### A. A Short History of Royce

Manners founded Royce in April 1983 and from that date until July, 1998 he owned, directly or indirectly all of its equity. Manners Aff. ¶ 2. In 1998, Manners sold fifty per cent (50%) of his interest in Royce to Speer, and, in connection with that sale, relinquished all operational control to Speer. *Id.* Manners surrender of mangagement was accomplished by making a company wholly owned by Speer the general partner of Royce. *Id.* Immediately after that sale, Manners moved out of Royce's offices. *Id.* Manners essentially withdrew from management and became a passive limited partner. *Id.* As an investor and fifty percent (50%) owner, Manners received distributions from time to time from the profits Royce generated. *Id.* Manners also owned one-third of the equity in Texas Colonial Homes, L.P. ("TCH") a company operated by George Kopecky, another one-third owner and Speer. Manners Aff. ¶ 3. He never had any management responsibility for TCH. *Id.*

Royce had a history of excellent profitability for its partners. Manners Aff. ¶ 2. For example,

5

during the period, 2002 through 2006, it distributed approximately $60,000,000 to its partners; yet, as of year-end 2006, it still had equity of over $36,000,000.  Manners Aff. ¶ 2; Exhibits E & F. Despite the onset of the recession in home building, Royce was still profitable and had over $17,000,000 in partners' equity as late as year-end 2007.  Exhibit G.

## B.  Speer's Purchase of Manners' Remaining Interests

In 2006, Speer and Manners began to negotiate Speer's acquisition of the remainder of Manners' equity in Royce, including his interest in TCH.  Manners Aff. ¶ 4. The price was finally set at $33,342,405.  Exhibit B at 1.  This amount was computed by adding to Manners' controlled equity, approximately $18,000,000, a multiple of 75% of that equity plus a $2,000,000 operating income allocation.  Manners Aff. ¶ 4.  The 75% multiple was a typical equity multiple for the acquisition of home building companies as of 2006.  *Id.*   As of the date agreement was reached, Royce's internal projections were that equity would steadily increase over the coming years and would reach $170,000,000 by year-end 2010.  Mitchell Depo at 45-49; Exhibit A.

The final agreement had the following basic terms – an initial payment of $20,000,000 paid at the date of purchase with an additional $13,300,000 potential payout based on Royce's continued profitability.  Manners Aff. ¶ 5. Each of Royce's lenders was advised of and consented to Speer's purchase of Manners' interests in Royce.  Exhibit I.  Speer borrowed $20,000,000 from Amegy for the cash payment.[4]  Manners Aff. ¶ 4.  All obligations under the Purchase Agreement and the Manners Note were solely the responsibility of Speer and Royce had no liability to Manners. Exhibits B & C.  Speer's personal responsibilities on the Manners Note were, however, tied to

---

[4]  Due to some agreed upon offsets, the actual amount of cash paid at closing was $18,578,686.  Exhibit A at 2.

6

Royce's continued profitability. Manners Aff. ¶ 4. Speer and not Royce had to be the purchaser.  It would have been idiotic for Royce to purchase the Manners' interests due the immediate loss of $33,000,000 in equity and adverse tax ramifications for Speer.  Schwartz Aff.  ¶¶ 4-6.

First, there was a one-time payment due October 2, 2006 that was comprised of (i) $1,500 for every lot acquired by Royce upon which home construction commenced before  September 30, 2006, and $1,500 for every home closed between June 30, 2006 and September 30, 2006. Exhibit C at 2.  Regular monthly payments on the Manners Note commenced October 1, 2006.  *Id.*  The amount of each monthly payment was the combination of (i) $1,500 for every lot Royce acquired for home construction after October 1, 2006 upon which construction commenced and (ii) $1,500 for the sale of every home for which Royce commenced construction after June 1, 2006.  The monthly payments, subject to subordination to be discussed below, were to continue until the earlier of all principal and interest due under the note being paid or June 30, 2010.  *Id.*  The fundamental concept was that note payments would be deferred or potentially never made in the event Royce's home building activity and profitability declined.

The subordination provisions of the Manners Note have been totally misinterpreted by Tow.  3rd Complaint  at 108-113.  Speer's debt to Manners was not subordinate to every creditor of Royce.  Exhibit C at 3-4.  It was subordinate only to Royce's lenders.  *Id.* Further, pursuant to the Intercreditor Agreement between Manners, DWM and Saracen, on the one hand, and Amegy on the other, Speer's debt to Manners, DWM and Saracen was also subordinated to Speer's obligation to repay Amegy for the cash Speer borrowed and paid Manners at closing. Exhibit H at 2.  Fundamentally, under the Manners Note and the Intercreditor Agreement, Speer was precluded from making any payment on the Manners Note at any time a default existed between Royce and any of

its lenders or Speer was in default to Amegy.  Exhibit C at 3-4 & H at 2.

Between October 2006 and June 2007, Manners, DWM and Saracen received approximately $3,000,000 in payments on the Manners Note.  Manners Aff. ¶ 6.  Every payment was made by means of a personal check from Speer drawn on his personal account.  *Id.*  No money was ever received from Royce or any other source.  *Id.*  In June 2007, Speer informed Manners that he was suspending payment on the Manners Note due a slow down in Royce's business.  *Id.*  Although as discussed above, Royce still had over $17,000,000 in equity as of year-end 2007, payments never resumed. *Id.*

In connection with the sale of his interests in Royce, Manners was given the honorary title of "Chairman Emeritus," but that title carried no authority of any sort.  Manners Aff. ¶ 4.  He was also to be paid a "salary" of $160,000 per year with employee benefits, but he had no duties and performed no services.  *Id.*  In addition, for the same three years Manners was to receive a salary, he, DWM and Saracen promised not to compete with Royce.  Exhibit B at 10-12.

## VII.  ARGUMENT AND AUTHORITIES

### A.  Motions to Dismiss Under Federal Rule 12(b)(6) (Standard of Review)

Although Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," it is now clear that a complaint must contain factual allegations sufficient to give the defendant fair notice of the grounds for the claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.W. 544, 555-556 (2007).  Mere legal conclusions will not suffice, and a court considering a motion to dismiss under Rule 12(b)(6) does not consider legal conclusions as well-pleaded facts. *Id.*  Further, naked assertions without factual enhancement are insufficient to state a claim *Id.* at 557.  The complaint must also have sufficient

factual content to allow the court to infer a reasonable conclusion that the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.  Motions for Summary Judgment Under Federal Rule 56 (Standard of Review)

The purpose of summary judgment is to go underneath the pleadings to examine the proof and determine if there is, in fact, need for a trial.  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the moving party presents evidence showing that the opposing party cannot prevail or points out the lack of proof of an essential element of a claim or defense, the opposing party must present proof of a genuine issue of fact.  *Celotex Corp. v. Catlett*, 477 U.S. 322-323 (1986); *Fontenot v. The Upjohn Company*, 780 F.2d 1190, 1195 (5th Cir. 1986); Fed. R. Civ. P. 56(c).  To show a genuine issue of fact, the opposing party must present plausible evidence. *Matsushita*, 475 U.S. at 588.  If there is no genuine issue of fact, summary judgment should be entered "forthwith."  Fed. R. Civ. P. 56(c).

### C.  Choice of Law Issues

In Texas, the fiduciary duties owed by a company insider to the company are generally governed by the law of the jurisdiction under whose laws the company was formed.  *Sommers Drug Stores Co. Empl. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 353 (5th Cir.1989)(applying Texas Business Corporation Code article 8.01.A); *Pride International, Inc. v. Bragg*, 259 S.W.2d 839-848-849 (Tex. App. – Houston [1st Dist.] 2008, no pet).  Royce was formed under Delaware law; therefore, its law applies to the "internal affairs" of Royce.  *Id.*  Substantively, however, there seems to be little, if any, difference between the laws of Delaware and Texas with regard to the fiduciary duty of partners and limited partners.  *See Pride International*, 259 S.W.3d at 849 f/n 3.

Claims for conspiracy, aiding and abetting, acting in concert and other common law tort

claims, if committed in Texas, should be governed by Texas law.  *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)(Texas applies the "most significant contacts test" where its tort law conflicts with another jurisdiction); *see also ASSARCO LLC v. Americas Mining Corp*, 382 B.R. 49, 74 f/n 14 (S.D. Tex. 2007)(a claim for conspiracy among different actors is not an "internal affair").  This is potentially significant in this case because it is unsettled as to whether Texas law recognizes a tort for aiding and abetting fiduciary breach.  *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 f/n 7 (Tex. 2001).  Also, Delaware law does not impose fiduciary duties in circumstances where Texas might.  *CML V, L.L.C. v. Bax,* 16 A.3d 238, 246 (Del. Ch. 2010), *aff'd*, 28 A.3d 1037 (managing agents of an insolvent limited partnership owe no duty to creditors); *see also* DEL. CODE ANN. tit 6 § 17-1002.

The duties and obligations of Texas employees is a matter in which Texas will almost always have the paramount interest.  The agreement that Manners would remain on salary with benefits in connection with his honorary appointment as "Chairman Emeritus" and his agreement not to compete with Royce was made in Texas.  Manners Aff. ¶ 4.  Further, Texas has a strong public policy interest in employment agreements involving Texas residents.  *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678-680 (Tex. 1990).  Once Manners divested himself of all interest, direct or indirect, Delaware had no further interest in his relationship to Royce.  *See DeSantis*, 793 S.W.2d at 678-679 citing Restatement (Second) Conflict of Laws § 188 (1971).[5]

Finally, the Manners Note provides that it is to be governed by Texas law.  Exhibit B ¶ 15(a).  This is a valid contractual agreement that should be honored by the Court.  *American Home*

---

[5]  Choice of law to govern a contract in the absence a contractual choice of law agreement depends upon (i) place of contracting, (ii) place of negotiation, (iii) location of the subject matter, (iv) place of performance, and (iv) place of business of the parties.  Restatement (Second) Conflict of Law Section 188.

*Assurance Co. v. Safeway Steel Products Co., Inc.*, 743 S.W.2d 693, 697 (Tex. App. – Austin 1987, writ denied).

### D.  At No Material Time Was Manners a Fiduciary of Royce

**1.  Tow Fails to State a Claim That Manners Was a Fiduciary of Royce**

Tow's allegations that Manners owed fiduciary duties to Royce are based on bald assertions, most of which are legal conclusions, that are unsupported by any facts other than the meaningless recitals that Manners was "Chairman Emeritus.".  For example, Tow pleads –

- Manners was "an employee, control person and Chairman Emeritus;" 3rd Complaint at 9;

- Manners was "Chairman Emeritus;" 3rd Complaint at 15;

- Manners was a fiduciary of Royce; 3rd Complaint at 17, 47;

- As "Chairman Emeritus," Manners was a fiduciary; 3rd Complaint at 49;

- As one of the "fiduciaries" Manners controlled Royce; 3rd Complaint at 51;

- As a fiduciary, Manners "allowed" Speer to use Royce funds to pay Speer's personal debt; 3rd Complaint at 62; and

- As a fiduciary, Manners failed to safeguard Royce's assets. 3rd Complaint.

Yet, despite the redundant frequency of these conclusions, Tow never pleads a single specific fact that gives rise to a fiduciary duty owed by Manners to Royce.

### a. Chairman Emeritus was merely a title and nothing else

The honorary title of Chairman Emeritus does not carry with it any suggestion of fiduciary duty.  It is simply an honorary position ordinarily held "after retirement."  Miriam-Webster Online Dictionary (2012).  Such a title confers no power or authority.  *See Stodghill v. Serv. Employees' Intern. Union, Local 50*, 13 F. Supp. 2d 960, 969 (E.D. Mo. 1998), *rev'd in part on other grounds*,

192 F.3d 1159 (8th Cir. 1999)("president emeritus" is not an officer position); *Eckert v. Eckert*, 182 NYS 2d 600, 601-692 (N.Y. Sup. Ct. 1958)("chairman emeritus" received salary but had no right to vote).  There is statutory law to the same effect.  S.C. CODE ANN. § 40-22-20 (retired from active practice of engineering); MINN. STAT. ANN. § 147E.15 (doctor no longer sees patients).

Companies often use the status of chairman or officer emeritus to maintain the good will associated with the name of a well-known founder. *E.g. JA Apparel Corp. v. Abboud*, 568 F.3d 390, 394 (2d Cir. 2009) (Joseph Abboud well known in fashion industry continued as chairman emeritus after sale of his company); *Snavely v. C.I.R.*, 67 T.C.H. (CCH) 3056 (T.C. 1994); *Lewis v. Playboy Enterprises, Inc.*, 664 NE.2d133, 134 (Ill. App. Ct. 1998)(Hugh Hefner, founder of *Playboy*, chairman emeritus).  This is precisely what occurred in this instance. The title of "Chairman Emeritus" was declared by the sales agreement to be "honorary."  Exhibit D.  As founder and original president of Royce, Manners' name was valuable to Royce.  Exhibit B at 12-13.

The core of a fiduciary relationship is that a person has the "duty, created by his undertaking, to act primarily for another's benefit in connection with the undertaking."  BLACK'S LAW DICTIONARY at 753 (4th Ed.).  When one undertakes to act for the benefit of another, such as the attorney for the client, a director for a corporation or management of a partnership, fiduciary duties arise.  *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1944).  When acting in a fiduciary capacity, the fiduciary carries out business and handles property that is not his or her own for the benefit of another.  BLACK'S LAW DICTIONARY at 753 (4th Ed.).  The honorary title of Chairman Emeritus conferred no authority of any sort upon to Manners to act on behalf of, deal with the assets of or conduct the affairs of Royce, and Manners never agreed to such an undertaking.  The honorary title conferred no fiduciary duties.

12

b.  Manners status as an "employee" conferred no fiduciary duties

The leading Texas case as to when an employee owes fiduciary duties to an employer is *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.2d 193 (2002).  The primary question is whether the employee "occupies a position of peculiar confidence towards another." *Id.* at 199.  It would seem that an employee, as a type of agent, has an obligation not to secretly profit at the expense of the employer and must fully disclose that he may profit at the employer's expense. *Id.* at 200.   But, beyond that, there are no specific obligations rising to the level of fiduciary duty merely because one is in the employ of another.  *Id.*  For example, in *Johnson*, the Texas Supreme Court held that a law firm associate, so long as he did not secretly profit, had no fiduciary duty to refrain from referring a potential client to another law firm.  *Id.* at 202.

The 3rd Complaint makes no claim that Manners made a secret profit or that he failed to honor any promise he made to Royce.  Indeed, Tow pleads that Manners had no duties as an employee and performed none. 3rd Complaint at 156-157.  Furthermore, the complaint makes clear that Royce, the employer, was fully informed as to his receipt of salary and benefits.  3rd Complaint at 156 (Speer negotiated the salary and benefits to be paid to Manners).  In this instance, Manners was not paid to perform services.  The consideration he gave was the goodwill associated with his name and his agreement not to compete.  There is no suggestion in the 3rd Complaint that he did not honor those obligations.

Finally, the naked assertion that Manners controlled Royce, e.g. 3rd Complaint at 51, is not only unsupported by any factual allegations, it is refuted by the pleading itself.  As Tow pleads, Manners sold all of his interest in Royce on September 20, 2006. *E.g.* 3rd Complaint at 53. There is no pleading of a single fact showing control by Manners after that date or since July 1998, for that

13

matter.

      c.  <u>Tow has failed to state a claim that Manners was a fiduciary of Royce</u>

Despite its mind-numbing length, in the 3rd Complaint, insofar as fiduciary duty is concerned, Tow fails to allege a single fact that can support a plausible conclusion that Manners owed fiduciary duties to Royce. He fails to allege a single undertaking by Manners to act for Royce or hold property for the benefit of Royce. The claims should be dismissed.

**2.  Tow has no evidence to support his claim that Manners was a fiduciary of Royce**

Tow has had extensive discovery. Indeed, the 3rd Complaint contains 398 pages of excerpts from examinations taken by Tow's counsel pursuant to Bankruptcy Rule 2004 before this action was even commenced. This Court has been called upon to rule on disputes relating to Tow's extensive document demands. Memorandum and Order in BR No. 09-32467, doc. 437 at 3 (Speer alone produced over 100,000 documents). Manners has produced 6,009 pages of documents in response to a Tow subpoena served before this action was filed and it required over 200 pages to transcribe the 2004 examination that Manners gave. Manners Aff. ¶ 6. Tow has had more than adequate time to assemble facts to support his claim that Manners was a fiduciary, and he cannot do so.

In response to a motion for summary judgment, a party who bears the burden of proof on an issue must present some evidence to raise a genuine issue of fact showing there is a need for trial on the issue. *Fontenot* 780 F.2d at 1192. All that can be shown is --

    •    that Manners was, directly and through his companies, a limited partner in Royce;

    •    that he sold his interests in the limited partnership and its affiliates for a negotiated

price to a willing buyer, Speer;[6]

- that he allowed his name be used for good will after the sale;

- that he agreed not to compete with Royce for three years;

- that he was paid a salary, but owed no duties to Royce, exercised no control of any sort nor had any right to control; and

- that he received from Speer approximately 60% of the agreed upon consideration.

Tow can produce no evidence of a fiduciary duty before September 20, 2006 because Manners was, directly and through his companies, merely a limited partner and, as such, no duty to Royce or its affiliates. *Bond Purchase L.L.C. v. Patriot Tax Credit Properties, L.P.*, 746 A.2d 842, 864 (Del. Ch. 1990); *see* DEL. CODE ANN. tit. 6 § 17-303(a) (limited partner has no responsibility for debts unless the partner controls the business). Under the Royce Partnership Agreement, limited partners had no participation in management, and, therefore, there was no undertaking giving rise to any fiduciary duty to Royce or participation by Manners in any management decisions made by the general partner. Exhibit J at 15-16. Likewise, Tow has no evidence raising fiduciary duties on the part of Manners after September 20, 2006, the date he sold all of his interests in Royce.

Summary judgment should be entered on all claims Tow makes based upon his naked, insupportable claim that Manners was a fiduciary of Royce.

### 3. Tow Has No Evidence Manners Owed Fiduciary Duties to Royce Creditors

It is not altogether clear whether Tow is alleging claims based upon a fiduciary duty to creditors. To the extent he may be, the claim must fail. Delaware law governs to whom Manners

---

[6] Tow states that Manners and Speer "went to great lengths to devise a scheme" to pay Manners without reducing the equity of Royce. How Manners' agreement to sell to Speer was some sort of "scheme" is impossible to discern. If Speer purchasing the interests delayed reductions in equity until Speer took distributions to pay his note, that was nothing but a legitimate business decision. In closely held companies, such decisions are made every day. Furthermore, the deal was disclosed to all lenders and outside auditors.

might owe fiduciary duties, and Delaware does not impose a duty upon partners in a limited partnership to act for the benefit of creditors.   *CML V, L.L.C. v. Bax,* 16 A.3d 238, 246 (Del. Ch. 2010), *aff'd,* 28 A.3d 1037 (managing agents of an insolvent limited partnership owe no duty to creditors); *see also* DEL. CODE ANN. tit 6 § 17-1002.

### E.  Manners and the Manners Companies Have No Secondary Liability

#### 1.  Tow fails to state a claim for secondary liability

In his live complaint, Tow invokes the chant "conspiracy, aiding and abetting or acting in concert" over and over again to justify imposing liability on Manners, and occasionally one or more of the Manners Companies, for alleged malfeasance on the part of Speer. *E.g.* 3rd Complaint at  47, 77, 101 & 108.  Tow supports each element of his mantra with a single allegation of fact – Manners agreed to sell his equity to Speer.  This conduct was simply not a wrong.  Similarly, Tow contends Manners helped manipulate Royce's financial statements and create fictional sales.  3rd Complaint at 102-103. However, not a single fact is alleged to show how Manners participated in manipulation or fictional sales.

Manners had every legal right to sell to Speer.  There are no facts pled that tend to suggest a plausible conclusion that Manners had a say of any sort as to when or where Speer got the money to pay for the equity.  Similarly, there are no specific allegations that support a conclusion that Manners played any part in Speer's obtaining the loan from Amegy that Speer allegedly used to make the initial $20,000,000 cash payment.  Even if Manners had, that is not wrong.  Sellers routinely assist buyers in obtaining financing to complete a purchase.

Furthermore, with regard to the Manners Note, the subordination Manners agreed to accept shows, if anything, a "conspiracy" to protect the interests Royce's lenders. *See* 3rd Complaint at 109.

16

Manners agreed that he could not be paid if Royce went into default under any loan agreement with any of its lenders.  That was clearly designed to protect Royce's creditors.

There are simply no factual allegations that will support a conclusion, plausible or otherwise, that Manners conspired to do anything wrong, aided and abetted or acted in concert with anyone to facilitate a wrong.  Insofar as secondary liability is concerned, Tow has not set out a claim upon which relief can be granted.

**2.   The same result is mandated under Rule 56 of the Federal Rules of Civil Procedure**

Manners and the Manners Companies also move for summary judgment on claims based on conspiracy, aiding and abetting or acting in concert. The source of the defective pleading described immediately above derives from obvious fact that Tow has no evidence that Manners agreed to do anything or did anything that facilitated a tort by Speer or anyone else.  Since he has no evidence of wrong doing on the part of Manners or any of the Manners Companies, summary judgment is appropriate.

Unless Tow can come forward with some evidence that Manners agreed to do some wrong or assisted in some wrong, summary judgment must be entered.  *Fontenot*, 780 F.2d at 1195.

### F.  Tow Has No Tort Claims Against Manners or the Manners' Companies

Despite the myriad allegations of fiduciary breach, theft, and related wrongs, the 3rd Complaint, on its face, defeats Tow's attempt to attach secondary liability to Manners or any of the Manners' Companies.  In his latest pleading, Tow judicially admits that Speer was "the president, chief executive officer, and key employee of Royce Homes as well as the president, sole director and sole owner of Royce's general partner, Hammersmith." 3rd Complaint at 9.  Tow further admits that after the purchase of Manners' interests on September 20, 2006, Speer was the "sole owner" of

17

Royce. 3ʳᵈ Complaint at 10.  As will be shown below, in light of these admissions, Tow can produce

no evidence that will raise a genuine issue of fact tending to show that Manners or the Manners'

Companies have any secondary liability.

### 1. Royce Ratified All Claims for Fiduciary Breach

Insofar as Manners is directly sued by Tow for breaching fiduciary duties to Royce, that claim

is governed by Delaware law.  *See* § IV. C. above.  Delaware law follows the general rule that no

cause of action exists for breach of fiduciary duty by a corporate fiduciary that is also the sole owner.

This is so because the wrong, if indeed there was a wrong, it was ratified. As the Delaware Court of

Chancery has noted in a case seeking to set aside a liquidation on the basis of the directors' fiduciary

breach:

> Furthermore, defendant's principal officers, Arthur R. Carmody and Edwin L. Norton hold
> between them 13,533 shares of defendant's stock [86%].  If these directors and the Equity
> Corporation through its directors on defendants's board participated in a bad bargain, they
> have injured themselves.  There has been no plausible motive which would cause such
> officers and principal shareholders to commit acts of self-injury... I conclude the defendant's
> stockholders were seasonably and adequately informed about the background nature and
> consequences of the plan of sale and liquidation insofar as the part played by its directors ,
> past and present, is concerned.

*Gropper v. N. Central Tex. Oil Co.*, 114 A.2d 231, 234-235 (De. Ch. 1955).  Furthermore, Delaware

statute law provides that there can be no claim for breach of fiduciary duty when informed

shareholders ratify the actions of directors and officers.  DEL. CODE ANN. tit. 8, § 144(a).  This

demonstrates, again, that a company formed in Delaware has no cause of action for alleged

management malfeasance condoned by its owner.

The concept that there is no fiduciary breach when the action or inaction is ratified by a

company's owners appears to be a universal rule.  *See e.g. In re: Safety Intern., Inc.,* 775 F.2d 660,

662 (5th Cir. 1985)(applying Texas corporate law); *Committee of Unsecured Creditors v. Doemling*, 127 B.R. 945, 952 (W.D. Pa. 1991)(applying Pennsylvania law); *In Re: Mediators, Inc.,* 1996 U. S. Dist. LEXIS 7639(applying New York law); *In re Tufts Electronics, Inc.*, 746 F.2d 915, 917 (1st Cir. 1984)(applying Massachusetts law); *Canion v. Texas Cycle Supply, Inc.*, 537 S.W.2d 510, 513 (Tex. Civ. App. – Austin 1976, writ ref'd n.r.e.)(applying Texas law).[7]

After the buyout in September 2006, Speer owned, directly or indirectly, all of the equity. In every instance in which it is alleged that Manners or a Manners' Company breached a fiduciary duty, Speer was a primary actor and had full knowledge of what, if anything, Manners or his companies did or did not do. The undeniable fact that Royce's owners ratified any alleged fiduciary breach is equally applicable before and after Manners sale of all of his interest in the partnership. To the extent, if any, a limited partner has the ability to ratify an action, Royce, through its managing agent and all owners, ratified any actions that were taken and no breach of fiduciary duty exists.

Furthermore, Tow, as trustee, only has the claims that were available to Royce on the date of the order for relief. *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008). Royce had no claims against Manners or any of his companies because, to the extent he could have conceivably breached a fiduciary duty, that breach was ratified. *See F.D.I.C. v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992)(corporation has no claim against its auditors for their failure to tell the corporation what, through its management, it already knew). Royce had no claims, and, therefore, Tow has none.

---

[7] Although deciding the case on the basis of ratification, the *Canion* court made an interesting observation:

> We have some difficulty in understanding how an officer and director of a corporation, who is its sole shareholder, may appropriate a corporate opportunity of his solely owned corporation.

*Canion*, 537 S.W.2d at 513.

**2.  Royce's Ratification of Speer's Acts Defeats Any Claim for Secondary Liability**

Any claim for secondary liability for an insider's breach of fiduciary duty, no matter the theory, depends on the existence of a viable tort claim on the part of the injured party against the fiduciary.  *In re: Nanovation Technologies, Inc.*, 364 B.R. 308, 345 (Bankr. N.D. Ill. 2007)(no underlying tort, no aiding and abetting); *In re Brentwood-Lexford Partners, LLC,* 292 B.R.255, 275 (Bankr. N.D. Tex. 2003)(trustee's failure to show the existence of breach of fiduciary duty defeated secondary liability).  One cannot aid and abet or act in concert with respect to a tort that never happened.  *See In re Monahan Ford Corp. Of Flusing*, 340 B.R. 1, 30 (Bankr. S.D.N.Y. 2006)(to state a claim for aiding and abetting fraud, must allege that fraud occurred).

The lack of a tort claim is as fatal to the conspiracy claim as it is to aiding and abetting or acting in concert.  The gist of a conspiracy claim is the wrong the conspirators sought to accomplish.  *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968).  Conspiracy is simply a means to extend liability beyond the party that actually committed the wrongful act.  *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983), *cert. denied*, 466 U.S. 938 (1984).

Since Tow has no evidence that a tort was committed, he has no claim for secondary liability and summary judgment should entered on all causes of action based on secondary liability.

**G.  The Same Result Obtains Under *In Pari Delicto* Analysis**

Basically, the equitable defense of *in pari delicto* simply means that a plaintiff cannot assert a claim against a defendant if the plaintiff bears fault for the wrong.  *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 354 (3rd Cir. 2001).  Even where there is damage to the company itself, there can be no complaint by the company when the harm was inflicted by insiders.  *In re: Bennett Funding Group, Inc.*, 336 F.3d 94, 99-100 (2nd Cir. 2003).

When, as here, a fiduciary is also the sole owner, the company has no claim even though the company suffered harm. *Shearson Lehman Hutton, Inc. v Wagoner*, 944 F.2d 114, 118 (2nd Cir. 1991).

Speer's actions are imputed to Royce and Royce is deemed to be a participant. *E.g. Wight v. BankAmerica Group,* 219 F.3d 79, 86 (2nd Cir. 2000). Since Royce has no claims against itself because it was *in pari delicto* with Speer, Tow has no standing to pursue third-parties such as Manners and the Manners' Companies. *In re: Bennett Funding Group*, 336 F.3d at 100; *In re: Enron Securities, Derivative & "ERISA" Litigation*, 511 F. Supp.2d 742, 797 (S.D. Tex. 2005).

### H.  Tow Has No Claims Based on Senior Debt

   a.  Tow does not own the "Senior Debt" claims arising under the Manners' Note

Apparently hoping to give himself standing as the representative of all creditors, Tow simply rewrites the terms of the subordination section of the Manners' Note. 3rd Complaint at 109. Those provisions do not make all creditors the holders of "Senior Debt" as defined in the note. Exhibit C at 3-4. To be senior debt, the creditor must first be "indebtedness." *Id*. "Indebtedness" is defined as "borrowed money," no matter how the borrowing is evidenced, i.e. by " notes, indentures or similar instruments..." *Id*. Under the Manners Note, Speer was precluded from making payments on the note while an "event of default" had occurred and was continuing under the terms of any loan agreement for Senior Debt. *Id.* at 4. If such a payment had been made, Manners, DWM and Saracen "will hold the same in trust and  pay it over **to the holders of Senior Debt**." *Id.* (emphasis added).

The plain wording of the note, together with the Intercreditor Agreement between Manners and Amegy, simply made Royce's lenders and Amegy third-party beneficiaries. Royce was not a party to the Manners' Note or the Intercreditor Agreement; therefore, it had no claims pursuant to

those agreements.   A trustee only has standing to pursue causes of action owned by the debtor on the date of bankruptcy, or those under the "avoiding powers" provided to a trustee by the Bankruptcy Code. 3 COLLIER ON BANKRUPTCY ¶ 323.03[2] (15th rev. ed. 2001).  Royce had no claims based on Senior Debt on the date of the order of relief was entered in this bankruptcy or at any other time; therefore, Tow has none.  *In re Seven Seas Petroleum, Inc.*, 522 F.3d at 584.  Tow's "avoidance" powers under the bankruptcy code are simply wholly inapposite to his supposed claims based on Senior Debt.  *See* 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b) & 724(a).  Tow obviously knows the avoidance statutes are inapplicable because he pleads none of them in connection with his Senior Debt claims.  Rather, he tries to rewrite agreements to which Royce was never a party.  Summary judgment should be rendered and Tow's Senior Debt claims dismissed.

### I.  Tow Can Produce No Evidence the Allard Sales Were at a Below Market Price

Throughout his Complaint, Tow notes that the sub-prime housing market in which Royce operated began a steady decline in 2006 and began to crash late that year.  *E.g.* 3rd Complaint at 11.  Then, despite acknowledging an industry wide decline, Tow turns around and accuses Allard of purchasing fifty houses from Royce in late 2007 at a "discount."  3rd Complaint at 78-79.  Based on nothing beyond the fact that Tow alleges the houses were sold for less than Royce paid for them, Tow concludes these bulk sales were some sort of scheme to enrich Allard and Manners.

Tow has no evidence the sale of houses to Allard were anything other than an arms-length purchase and sale at fair value.  Summary judgment should be entered dismissing all claims relating to Royce's sale of lots to Allard.

### J.  Tow Has No Evidence Manners Committed Theft, Is liable for Money Had and Received or Converted Any of Royce's Property

22

a.  Receiving payment on a debt is not theft

Reduced to actual facts, all Tow can allege is that Manners was paid on a debt that Speer owed him.  Tow cannot show that Manners had any control whatsoever over the funds of Royce.  The initial cash payment came from a loan to Speer, money never owned by Royce.  With respect to note payments, Manners had no control over where Speer obtained funds to make payments.

Furthermore, Tow's own pleading defeats any claim for theft.  Speer did not take distributions without the effective consent of Royce.  Speer was Royce's sole owner and Royce effectively consented to whatever he did.  In addition, Royce was not a party to the limited partnership agreement.  *Rodriguez v. U.S. Security Associates, Inc*., 162 S.W.3d 868, 876 (Tex. App. – Houston [14th Dist.] 2005, no pet.).  Royce was no more than an incidental beneficiary of the Manners Note and has no rights of enforcement.  *Id.*  Tow has no standing to suggest that a breach of that agreement constituted a theft of money.  Breaching an agreement is not even a tort.  *E.g. Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, (Tex. App. –  Texarkana 1996), *aff'd in part and rev'd in part on other grounds*, 939 S.W.2d 146 (Tex. 1997).

Summary judgment should be entered dismissing Tow's civil theft claim against Manners.

b.  There is no liability for conversion

In the Third Amended Complaint, Tow details how money from Royce bank accounts was used fund distributions to Speer.  3rd Complaint at 25-27 & 34-35.  Since the funds originated in ordinary bank accounts, these distributions are not a specie of property that can be converted.  *See Taylor Pipeline Const., Inc. v. Directional Road Boring, Inc.*, 348 F. Supp.2d 696, 707-708 (E.D. Tex. 2006).  Money can be subject to conversion only when it can be said to have become a specific chattel.  *Bobby Smith Brokerage, Inc. v. Bones*, 741 S.W.2d 621, 623 (Tex. App. – Ft. Worth 1987,

no writ).  If an indebtedness can be discharged by the payment of money generally, there is no claim for conversion. *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161 (Tex. App. – Houston 1966, writ denied); *Eckman v. Centennial Sav. Bank*, 757 S.W.2d 392, 398 (Tex. App. – Dallas 1988, writ denied).

Money that was deposited in Royce's operating accounts and commingled with other funds is not a chattel subject to conversion.  Furthermore, Manners, DWM and Saracen received payments from Speer, not Royce.  Manners Aff. ¶ 5.  Summary judgement should be granted dismissing Tow's conversion claims.

### c.  Tow does not plead or have evidence to support unjust enrichment claims

Tow makes shotgun allegations of unjust enrichment as to Manners, DWM and Saracen. 3rd Complaint at 169-170.  A single claim is also made against MGM for advertizing fees it received. 3rd Complaint at 170.  These claims should be dismissed for any number of reasons.

First, since liability against Manners, DWM and Saracen is predicated on "conspiracy or aiding and abetting or acting in concert" those claims should be dismissed for the reasons set out in Section IV, E above.  Second, all unjust enrichment cases should be dismissed for failure to state a claim because the pleading is devoid of facts to support the theory.  Finally, these claims should be dismissed because Tow has no evidence to support the essential elements of unjust enrichment.  .

Unjust enrichment requires a showing that a defendant (i) obtained a benefit, (ii) from the plaintiff, (iii) by fraud, duress or unfair advantage.  *Matagorda County v. Texas Ass'n of Counties Governmental Risk Mgmt Pool*, 975 S.W.2d 782, 785 (Tex. App. – Corpus Christi 1998), *aff'd,* 52 S.w.3d 128 (Tex. 2000).  Not only does Tow fail to allege a single fact showing fraud, duress or unfair advantage, he fails even to plead by legal conclusion or otherwise the elements of those

wrongs.  He certainly can offer no evidence that Manners or any Manners' Company defrauded Royce, exerted any duress over  Royce, or took unfair advantage.

The unjust enrichment claims should be dismissed pursuant to Rule 12(b)(6) or pursuant to summary judgment.

## V. CONCLUSION

Manners and the Manners Company seek (i) dismissal or summary judgment on all claims based on the concept that Manners owed fiduciary duties to Royce, (ii) dismissal or summary judgment on all claims secondary liability, (i) summary judgment on all claims based on the concept that Manners was a trustee for Royce's Senior Debt holders, (iv) summary judgment on the claims based on civil theft, (v) summary judgment on claims for conversion, and (vi) dismissal or summary judgment on all claims for unjust enrichment.

Respectfully submitted,

| | |
|---|---|
| _/s/  William C. Ferebee_ | _/s/  Eugene B. Wilshire_ |
| WILLIAM C. FEREBEE | EUGENE B. WILSHIRE |
| SBN 06907500 | SBN 21665500 |
| 450 Gears Road - Eighth Floor | 3840 One Houston Center |
| Houston, Texas 77067 | 1221 McKinney Street |
| Telephone: (281) 875-8200 | Houston, Texas 77010 |
| Telecopier: (281) 875-4962 | Telephone: (713) 651-1221 |
| wferebee@ofmklaw.com | Telecopier: (713) 651-0020 |
| | ewilshire@wilshirescott.com |
| ATTORNEY-IN-CHARGE FOR | |
| MICHAEL G. MANNERS | ATTORNEY IN CHARGE FOR |
| | MANNERS RELATED DEFENDANTS |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served ECF/PACER to those registered to receive such notice on the  20th  day of ____November____, 2012.



_/s/   Eugene B. Wilshire_

Eugene B. Wilshire

### INDEX OF APPENDICES

| TAB | DESCRIPTION |
|---|---|
| 1. | Affidavit of Michael G. Manners. |
| 2. | Affidavit of Marc Schwartz. |
| 3. | Exhibit "A" - Deposition Excerpts of Pamela Mitchell with Deposition Exhibit. |
| 4. | Exhibit "B" - Interest Purchase Agreement. |
| 5. | Exhibit "C" - The Manners Note. |
| 6. | Exhibit "D" - Manners Resignation from all Royce Entities. |
| 7. | Exhibit "E" - Royce Financial Statement for years-ends 2004 and 2005. |
| 8. | Exhibit "F" - Royce Financial Statement for years-ends 2005 and 2006. |
| 9. | Exhibit "G" - Royce Financial Statement for year-end 2007. |
| 10. | Exhibit "H" - Intercreditor Agreement dated September 20, 2012. |
| 11. | Exhibit "I" - Lender Consents to Speer's purchase of Manners' interest in Royce. |
| 12. | Exhibit "J" - Royce Agreement of Limited Partnership. |