# APPENDIX 10

### Exhibit "H"
### Intercreditor Agreement dated
### September 20, 2012

<u>INTERCREDITOR AGREEMENT</u>

THIS INTERCREDITOR AGREEMENT (this "Agreement"), dated as of September 20, 2006, is by and among DWM HOLDINGS, L.P., a Delaware limited partnership, SARACEN HOLDINGS, L.P., a Delaware limited partnership, and MICHAEL G. MANNERS, an individual (collectively, "Creditor"), JOHN H. SPEER, an individual ("Borrower"), and AMEGY BANK NATIONAL ASSOCIATION, a national banking association ("Lender").

R E C I T A L S :

Lender has agreed to provide extensions of credit to Borrower, as currently evidenced by that certain Loan Agreement dated on even date herewith, between Borrower and Lender (such Loan Agreement, as the same may be amended or modified from time to time is referred to as the "Lender Loan Agreement"), and Lender may in the future provide additional extensions of credit to Borrower.

Creditor has also provided extensions of credit to Borrower, as evidenced by that certain promissory note in the original amount of $13,342,405.00 dated September 20, 2006, executed by Borrower and payable to the order of Creditor ("Creditor Note").

NOW, THEREFORE, for good and valuable consideration, including the extensions of credit which Lender has agreed to provide to Borrower, Creditor and Borrower agree with Lender as follows:

Section 1.    <u>Definitions</u>.  As used in this Agreement, the following terms shall have the respective meanings indicated below:

"<u>Collateral</u>" means Borrower's ownership interests listed on Exhibit "A" hereto.

"<u>Event of Default</u>" shall have the meaning given to such term in the Lender Loan Agreement.

"<u>Default</u>" shall have the meaning given to such term in the Creditor Note.

"<u>Lien</u>" means any security interest, lien, mortgage, pledge, assignment or other encumbrance of any kind.

"<u>Senior Indebtedness</u>" means the principal amount of and interest (including post-petition interest) on all indebtedness, obligations and liabilities of every nature of Borrower to Lender, under the Loan Agreement and/or any promissory note executed by Borrower pursuant to the Loan Agreement.

"Unmatured Event of Default" shall have the meaning given to such term in the Loan Agreement.

Section 2.    Payment Subordination.  Creditor may receive payments on the Creditor Note subject to the terms, conditions and express subordination provisions contained in the Creditor Note.  Creditor recognizes and agrees that (a) the Senior Indebtedness is Senior Debt, as defined in the Creditor Note, and (b) if an Event of Default or Unmatured Event of Default exists, neither principal nor interest may be paid on the Creditor Note.

Section 3.    Lien Subordination and Other Matters.

(a)    The Senior Indebtedness is secured by, among other things, a Lien on all of the Collateral.  The Creditor Note is secured by a Lien on the Collateral.  The Creditor Note is not secured by any collateral other than the Collateral.  (Without limiting the foregoing, the Creditor Note is not secured by ownership interests in Hammersmith Group, Inc., a Texas corporation, or First Duvall Group, Inc., a Nevada corporation.)

(b)    The Liens in the Collateral securing the Senior Indebtedness are first priority Liens and are prior and superior to all Liens in the Collateral securing the Creditor Note.  The Liens in the Collateral securing the Creditor Note are subordinate and inferior to the Liens in the Collateral securing the Senior Indebtedness.

(c)    Notwithstanding the date on which any agreement between Borrower and Creditor was or may be entered into, the respective dates on which filings relating to security interests in the Collateral in favor of Creditor and Lender were or may be made, or the respective dates on which security interests in the Collateral in favor of Creditor and Lender were or may be perfected, whatever right, title, and interest, including all Liens, that Creditor has in and to any the Collateral shall, at all times and in all respects, be subject and subordinate to Lender's right, title, and interest, including all security interests, in such Collateral.

(d)    Notwithstanding any failure on the part of Lender to properly create or perfect its Liens in the Collateral, Lender shall be deemed to have first priority Liens in the Collateral, which are superior to the Liens of Creditor in the Collateral, as described in paragraph (a) above.

(e)    Creditor will not foreclose on any of the Collateral unless and until (i) the Senior Indebtedness is paid in full and Lender has no further obligation to lend to Borrower or (ii) Creditor has purchased the Senior Indebtedness on the terms described in Section 4.

(f)    Creditor will give Lender notice of any Default under Creditor Note, within ten (10) days of Creditor's becoming aware thereof.

(g)     In the event the Creditor Note remains unpaid at such time as the Senior Indebtedness is paid in full, Lender shall transfer possession of any Collateral held by Lender to Creditor.

Section 4.    <u>Right of Creditor to Purchase Senior Indebtedness</u>.  Lender will deliver to Creditor copies of any notice of an Event of Default which Lender gives to Borrower.  The date on which any such notice is given by Lender is referred to as the "Notice Date".  If Creditor desires to purchase the Senior Indebtedness from Lender, Creditor (whether one or more) shall have ten (10) days following the Notice Date to notify Lender that Creditor wishes to purchase the Senior Indebtedness from Lender, and such purchase must take place not more than twenty (20) days following the Notice Date.  Any such purchase shall be at a purchase price equal to the sum of all outstanding principal of the Senior Indebtedness, plus all accrued interest thereon to the date of purchase plus all other amounts owed to Lender under the Loan Agreement.  Any such purchase shall be without representation or warranty by Lender (other than representations  as to the ownership of the Senior Indebtedness by Lender and the outstanding balance thereof).  Upon such purchase, Lender shall assign and transfer the Senior Indebtedness, all Liens securing the Senior Indebtedness and all collateral in its possession to Creditor.

Section 5.    <u>Rights Concerning Senior Indebtedness</u>.  Without affecting the rights of the Lender hereunder, Creditor agrees that, with or without notice to or further assent from Creditor, Lender may at any time, and from time to time, either prior to or after any default by Borrower with respect to any indebtedness, (a) advance or refuse to advance additional credit and make other accommodations to or for the account of Borrower, (b) by written agreement or otherwise, extend, renew, change, modify, compromise, release, refuse to extend, renew, or change the Senior Indebtedness or any part thereof and waive any default under all or any part thereof, and modify, rescind, or waive any provision of any related agreement or collateral undertaking, including, but not by way of limitation, any provision relating to acceleration of maturity, (c) fail to set off any or all accrued balances or deposit balances or any part thereof on Lender's books in favor of Borrower or release the same, (d) sell, surrender, release, exchange, resort to, realize upon or apply, or fail to do any of the foregoing, with respect to any Lien on any Collateral or any part thereof held by Lender or available to the Lender for the Senior Indebtedness, and (e) generally deal with Borrower in such manner as Lender may see fit, including, any forbearance, failure, delay or refusal by Lender to exercise any rights or remedies Lender may have against Borrower, all without impairing or affecting Lender's rights and remedies under this Agreement.  Each such action and each such failure to act by Lender shall be deemed to be in reliance upon this Agreement.  No failure by Lender to file, record or otherwise perfect any lien or security interest, nor any improper filing or recording, nor any failure by Lender to insure or protect any Lien or Collateral nor any other dealing (or failure to deal) with any Lien or Collateral by Lender, shall impair or release the obligations of Creditor hereunder.  Notwithstanding the foregoing, absent the written consent of Creditor, Borrower may not pledge any Collateral securing the Creditor Note for any new loans by Borrower from Lender, including any increase in principal advanced by Lender to

Borrower over and above the amount of the Senior Indebtedness as it exists on the date of execution hereof, and the security interest of Lender in such Collateral shall not secure any such new loans or advances.

Section 6.    Representations and Warranties.  Creditor represents and warrants to Lender that the Creditor Note has not heretofore been assigned, transferred, pledged, or otherwise encumbered.

Section 7.    Severability. If any term, condition of provision of this Agreement or any other agreement or document executed in connection herewith or in connection with the Senior Indebtedness or any Collateral therefor is determined to be invalid or unenforceable under any law, such determination shall not affect the validity or enforceability of any other term, condition or provision hereof.

Section 7.    Amendment.  This Agreement may be amended only by an instrument in writing signed by all the parties hereto.

Section 9.    Waiver; Rights.  No delay by Lender in exercising any right or rights hereunder or in failing to exercise the same shall operate as a waiver of such right or rights. No notice to or demand on Borrower or Creditor shall be deemed a waiver of Lender's right to take further action without notice or demand.  No waiver of any of the provisions hereof shall be effective unless in writing and signed by Lender and then only in the specific instance for which given without in any way impairing the rights of Lender in any other respect at any time.

Section 10.    Venue and Service of Process.  This Agreement is executed and delivered as an incident to a lending transaction negotiated, consummated, and performable in Harris County, Texas, and shall be governed by and construed in accordance with the laws of the State of Texas.  Any action or proceeding under or in connection with this Agreement shall be brought in any state or federal court in Harris County, Texas, and the parties hereto hereby irrevocably submit to the exclusive jurisdiction of such courts, and waive any objection they may now or hereafter have as to the venue of any such action or proceeding brought in such court.

Section 11.    Applicable Law.  This Agreement was made in and is to be performed in Harris County, Texas, and shall be governed by and construed in accordance with the laws of the State of Texas.

Section 12.    Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, legal representatives, successors and assigns.

Section 13.   <u>Actions Required by Borrower</u>.  By signing this Agreement, Borrower agrees to do and perform any and all acts and things which may be required on its part to enable Lender and Creditor to perform their respective obligations under this Agreement, and to refrain from doing any act or thing which would cause or contribute to a violation by Creditor of any of its obligations hereunder.

Section 14.   <u>Term of Agreement; Waiver</u>.  This Agreement is a continuing agreement and shall terminate only when all Senior Indebtedness shall at any time be paid in full and Lender has no further commitment to lend to Borrower.  Creditor waives notice of the creation of the Senior Indebtedness and the renewal, extension, modification or increase thereof.

Section 15.   <u>Counterparts</u>.   This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto were upon the same instrument.

Section 16.   <u>Representations</u>.  Each party to this Agreement represents and warrants to the other parties hereto that (a) the execution, delivery and performance of this Agreement are within its powers, have been duly authorized by all requisite action, and do not and will not contravene its articles of incorporation or bylaws, any law or any agreement or undertaking to which it is a party or by which it is bound and (b) this Agreement is a legal, binding obligation of such party, enforceable against such party in accordance with its terms.

Section 17.   <u>Notices</u>.   All notices and other communications provided for in this Agreement shall be in writing and may be telecopied, mailed by certified mail return receipt requested, or delivered to the intended recipient at the addresses specified below or at such other address as shall be designated by any party listed below in a notice to the other parties listed below given in accordance with this Section.

If to Borrower:      John H. Speer
                     7850 N. Sam Houston Pkwy. W.
                     Houston, Texas 77064-3423
                     Telephone No.: 281-569-1102

If to Creditor:      DWM Holdings, L.P.
                     Saracen Holdings, L.P.
                     Mike Manners
                     211 Highland Cross Drive, Suite 101
                     Houston, Texas 77073-1700

If to Lender:        Amegy Bank National Association
Five Post Oak Park
4400 Post Oak Parkway
Houston, Texas 77027
Attention: Chris Denison
Telephone No.: 281-297-7869

Except as otherwise provided in this Agreement, all such communications shall be deemed to have been duly given when transmitted by telecopy, subject to telephone confirmation of receipt, when personally delivered or, in the case of a mailed notice, when duly deposited in the mails, in each case given or addressed as aforesaid.

SECTION 18.    <u>ENTIRE AGREEMENT</u>.  THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT AMONG THE PARTIES HERETO WITH RESPECT TO THE SUBJECT MATTER HEREOF.  THERE ARE NO ORAL AGREEMENTS AMONG THE PARTIES HERETO.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

CREDITOR:

DWM HOLDINGS, L.P.

By:    DWM Holdings GP, L.L.C.

By: _____
Name: _____
Title: _____

SARACEN HOLDINGS, L.P.

By:    Saracen Holdings GP, L.L.C.

By: _____
Name: _____
Title: _____

_____
MICHAEL G. MANNERS

BORROWER:

_____
JOHN H. SPEER

j6171.15.v7.wpd

LENDER:

AMEGY BANK NATIONAL ASSOCIATION

By:_____
        Christopher M. Denison
        Senior Vice President

<u>EXHIBIT "A"</u>

| | | |
|---|---|---|
| Royce Holdings, LP | Limited Partnership Interests | 50.58% |
| RTI Reinsurance Company, Ltd. | Stock | 50% |
| Hammersmith Financial, LP | Limited Partnership Interests | 40% |