IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODNEY TOW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-3700 |
| | § | |
| JOHN SPEER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

This adversary proceeding arises out of the Chapter 7 bankruptcy of Royce Homes, L.P., a residential property developer and builder. Rodney Tow, appointed as the bankruptcy trustee, sued John Speer, Royce Homes's former owner, with others, alleging the right to avoid fraudulent transfers that Speer caused Royce Homes to make directly to himself or to others for his benefit, and to receive damages from Speer for those transfers.

After extensive litigation, including a jury trial resulting in a partial verdict and a second jury trial on the remaining claims, the court entered final judgment in March 2015. The judgment ordered Speer to pay Tow $12,129,006.90 for the transfers that the jury found were fraudulent, as well as $11,948.03 in costs. (Docket Entry No. 412). The judgment included postjudgment interest at the Texas rate. The court denied Tow's motion for attorneys' fees, without prejudice, allowing him to submit an amended fee application with additional information about the time and work his attorneys spent on this case.

Tow has submitted a supplemented motion for attorneys' fees, and Speer has responded. (Docket Entry Nos. 413, 415, 418). Speer has also moved for a new trial, to which Tow has

responded. (Docket Entry Nos. 426, 437). This opinion addresses both motions.

Based on the motions and responses, the record, and the applicable law, the court denies Speer's renewed motion for a new trial, except as to one aspect. The court vacates the award of postjudgment interest because it was incorrectly calculated using the Texas rate. Tow is entitled to postjudgment interest, but it must be calculated at the Federal Reserve System prime rate. Tow's supplemented motion for attorneys' fees is granted in part, awarding $3,023,449.98 instead of the $3,969,271.78 sought.

The reasons for these rulings are explained below.

## I.  Speer's Motion for New Trial

### A.  The Applicable Legal Standard

Rule 59 of the Federal Rules of Civil Procedure states that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." FED. R. CIV. P. 59. "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Beckham v. La. Dock Co., L.L.C.*, 124 F. App'x 268, 270 (5th Cir. 2005) (citing *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir. 1985)). A motion for a new trial should be granted only when "the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 838–39 (5th Cir. 2004). Relief is also appropriate when there has been an intervening change in the controlling law. *Schiller v. Physicians Res. Grp.*

*Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Altering, amending, or reconsidering a judgment under Rule 59(e) is an "extraordinary remedy" that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). A motion to reconsider may not be used to relitigate old matters or to raise arguments or present evidence that could have been raised before the challenged judgment or order was entered. 11 WRIGHT, MILLER, AND KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 127–28 (footnotes omitted).

### B.  Analysis

In his renewed new-trial motion, Speer argues that the court erred by: (1) denying his motion for partial summary judgment, (Docket Entry No. 245); (2) permitting Saul Solomon to testify as an expert; (3) denying his motions for judgment as a matter of law based on insufficient evidence at both trials; (4) awarding a money judgment under TUFTA, § 24.008(a)(3)(C); (4) finding no waiver despite Tow's failure to plead claims under 11 U.S.C. § 550 or under TUFTA, § 24.008(a)(3)(C);

(5) submitting jury questions on actual and constructive fraud; (6) denying Speer's motion to conduct discovery into potential jury misconduct; (7) applying a $1 million settlement credit—rather than a $1.5 million credit—for the transfer and sale of 19.25 acres of land in Galveston, Texas approved as part of a settlement; and (8) awarding prejudgment and postjudgment interest at the Texas rather than the federal rate. (Docket Entry No. 426).

Only one of these arguments is new. When Speer raised these arguments earlier, the court found them legally and factually deficient for the reasons explained in the March 10, 2015 Memorandum and Opinion granting Tow's motion for judgment, (Docket Entry No. 412); the January 31, 2015 Memorandum and Opinion granting Speer's motion for summary judgment in part and denying it in part, (Docket Entry No. 292); and the court's statements at the November 26, 2013 hearing on the motions to exclude Solomon's opinions, (Docket Entry No. 271). Speer presents no new facts or intervening changes in the law for the previously raised arguments that he reasserts in the present motion.

### 1.   The Arguments Already Addressed

Speer argues that there was insufficient evidence of actual or constructive fraud presented at either trial and that the court erred in denying his motions for judgment as a matter of law. (Docket Entry No. 426 at pp. 6–14). Speer also argues that Tow was not entitled to a money judgment because he did not plead the appropriate statutes and because he failed to establish that the money transferred was from Royce Homes's funds and not the funds of its subsidiary, Texas Colonial. (*Id.* at pp. 14–19).

Speer raised these arguments in his earlier postverdict briefing. The court addressed and rejected them in the March 10, 2015 Memorandum and Opinion. (Docket Entry No. 412). Because

Speer's renewed new-trial motion neither supplements his arguments nor points to new legal or factual bases supporting them, the court denies relief based on these arguments, for the reasons set out in the March 2015 opinion.

### 2. Saul Solomon's Testimony

Speer argues that Saul Solomon, Tow's expert witness, was not qualified under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), to give the opinions he offered. (Docket Entry No. 426, at p. 4). Speer contends that because Solomon's opinions were "unsupported and unreliable," "without foundation," and "speculative," his testimony and related exhibits should not have been admitted. (*Id.* at p. 5).

Under *Daubert* and Rule 702 of the Federal Rules of Evidence, the district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Hathaway v. Bazany*, 507 F.3d 312, 317 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93). The district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). In making its reliability determination, the court should not decide the validity of the expert's conclusions, but should instead consider the soundness of the general principles or reasoning the expert relied on and the propriety of the methodology the expert used to apply those principles to the facts of the case. *Daubert*, 509 U.S.

at 594–95.

Tow met his burden of showing that Solomon's methodology, assumptions, and the work he performed were admissible. (*See* Docket Entry No. 271 at pp. 52–53). Solomon's credentials and training qualified him to testify, if his opinions were reliable and helpful. His opinions about Royce Homes's capital and its covenants with creditors, and about reasonably equivalent value for specific transactions, were supported by a proper foundation. Solomon's testimony showed the principles and methods he used and that they were well within the requirements of his professional discipline. His testimony was relevant to the issues, reliable, and helpful to the jury. Solomon was qualified under *Daubert* and Rule 702 to give the expert opinions he testified to and the court did not err in admitting that testimony and related exhibits.

### 3.    Jury Misconduct

Speer argues that the court erred in denying his motion to conduct discovery into potential jury misconduct and in refusing to hold an evidentiary hearing on the issue. (Docket Entry No. 426 at p. 19). Speer raised the potential misconduct issue in his postverdict briefing. He alleged that a juror's comment, posted on a blog just after the trial ended, indicated that the juror had been "exposed to extraneous prejudicial information during trial." (Docket Entry No. 395 at pp. 1–2). The court denied Speer's motion to conduct discovery and to hold an evidentiary hearing, finding that the blog comment did not raise an issue of the juror's, or the jury's, exposure to prejudicial extraneous evidence during the trial and deliberations, or of misconduct by the blogging juror.

An evidentiary hearing is neither required nor appropriate for every allegation of a juror's misconduct or improper exposure to extraneous information. *See United States v. Smith*, 424 F.3d 992, 1011 (9th Cir. 2005). The case law distinguishes between "testimony related to influence

caused by extrinsic factors, such as a bribe, which is admissible post-trial, and testimony about intrinsic factors, such as a juror's thought processes, which is inadmissible." *United States v. Scott*, 576 F. App'x 409, 413 (5th Cir. 2014). "[A] hearing is inappropriate when the alleged influence has to do with a juror's internal state of mind." *United States v. Cornelius*, 696 F.3d 1307, 1325 (10th Cir. 2012) (citing *Tanner v. United States*, 483 U.S. 107, 118–25 (1987)). The comment the juror posted after the trial reflected the juror's subjective reaction to trial testimony and witnesses. "[T]he subjective thoughts and emotions that may have influenced a juror's deliberations are shielded from inquiry." *Carson v. Polley*, 689 F.2d 562, 581 (5th Cir. 1982). The comment posted on the blog after the trial ended described the juror's views of the testimony Speer had presented in court, not extraneous evidence or influences received during the trial. (Docket Entry No. 395 at p. 2). Discovery and a hearing are not required or appropriate.

Neither the content of the juror's comment nor its timing suggests that the juror had engaged in conduct during the trial, including blogging or reading blog entries posted by others, that exposed the juror to extrinsic prejudicial evidence during the trial or deliberations. The comment is about what happened inside the courtroom, not about information from outside the courtroom. The blog comment was not posted until after the verdict was received and the jurors were released. Juror misconduct during trial generally cannot be implied from conduct after the trial has ended. *See Scott*, 576 F. App'x at 415. Speer was not entitled to an evidentiary hearing, to conduct discovery into the blogging juror's identity or the jury deliberations, or to relief from the judgment on this basis.

### 4.      Settlement Credits

Speer argues that the court erred in calculating the settlement credits that it deducted from the money judgment awarded. (Docket Entry No. 426 at p. 19). The court deducted $1 million from

the money judgment for land Watermark Land, LLC conveyed to Tow in the Kopecky settlement. Speer contends that the land and the credit should have been valued at $1.5 million. (*Id.*). Speer had the burden of showing the value of the settlement credit. *See Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002).

Speer's only basis for raising the value of the land conveyed in the settlement is Tow's estimate to the Bankruptcy Court, before the land was sold, that its value "approached 1.5 million." (*Id.*). The court applied a $1 million credit based on the land's actual sales price, the amount received when the land was sold. Speer did not meet his burden of showing that the sales price undervalued the land or that the presale estimate was more accurate and reliable. This argument does not present a basis for relief from the judgment.

### 5.    Prejudgment Interest

Speer argues that the court abused its discretion in awarding prejudgment interest at the Texas rate. (Docket Entry No. 426 at p. 20). Speer first argues that the court should not have awarded any prejudgment interest because Tow engaged in "hundreds of hours of pre-lawsuit discovery" instead of narrowing the issues and defendants, and because the partial verdict returned in the first trial was favorable to Speer on many of the challenged transfers. (*Id.*).

For the reasons discussed in the court's March 10, 2015 Memorandum and Opinion, these arguments are not a basis to withhold prejudgment interest. An interest award is intended to "make a plaintiff whole" based on the damages awarded. *Williams v. Trader Pub. Co.*, 218 F.3d 481, 488 (5th Cir. 2000). The damages and the prejudgment interest amounts were based solely on the transfers that the jury found avoidable. The damages and interest were reduced to the extent that the jury found Speer not liable for some of the challenged transfers.

Alternatively, Speer argues that any prejudgment interest award should have been at the Federal Reserve System prime rate used for postjudgment interest under 28 U.S.C. § 1961(a), not the Texas prejudgment interest rate. He argues that any right Tow had to the money judgment derived from the federal Bankruptcy Code. (Docket Entry No. 426 at p. 21). This argument ignores the facts that Tow brought both federal and Texas claims, the parties framed their arguments under Texas law, and the court applied Texas law to the substance of Tow's claims. The argument also fails to account for the fact that while federal law allows prejudgment interest, it does not set the rate. *Matter of Texas Gen. Petroleum Corp.*, 52 F.3d 1330, 1339 (5th Cir. 1995). When, as here, federal law is silent on the prejudgment interest rate but incorporates state law, a court may look to state law to determine the rate. *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 984 (5th Cir. 1991) (citing *United States ex rel. Canion v. Randall & Blake*, 817 F.2d 1188 at 1193 (5th Cir. 1987)). The predominance of state-law issues in this case and the fact that the Bankruptcy Code requires reference to state law provided ample basis for applying the Texas prejudgment interest rate.

### 6. Postjudgment Interest

Tow initially asked for postjudgment interest at the federal rate. (Docket Entry No. 394). Speer responded, agreeing that the court should award postjudgment interest at the federal rate. (Docket Entry No. 404). Tow replied and amended his request to ask for postjudgment interest at the Texas rate. (Docket Entry No. 408 at pp. 24–25). Tow asserted that Texas law supplied the postjudgment interest rate because his right to receive a money judgment derived from TUFTA. (*Id.*). Speer did not respond to Tow's amended request. The court awarded interest at the Texas postjudgment interest rate, finding that it was "appropriate" to refer to the state rate for postjudgment as well as prejudgment interest. The court relied on other cases applying the Texas postjudgment

interest rate to a money judgment for fraudulent transfers under TUFTA.  (Docket Entry No. 412).

*See, e.g.*, *In re Cowin*, 492 B.R. 858, 905 (Bankr. S.D. Tex. 2013); *In re Advanced Modular Power*

*Sys., Inc.*, 413 B.R. 643, 685 (Bankr. S.D. Tex. 2009), *aff'd sub nom. Hsu v. W.*, No. ADV 08-03177,

2009 WL 7760300 (S.D. Tex. Dec. 30, 2009).

On reconsideration, this analysis was flawed.  The federal postjudgment interest rate applies

to money judgments entered in federal court civil actions or proceedings, whether the right to relief

depends on or derives from federal or state law.  *Hall v. White, Getgey, Meyer Co.*, 465 F.3d 587,

594–95 (5th Cir. 2006).  Bankruptcy-related actions are no exception.  *See Pester Refining Co. v.*

*Ethyl Corp. (In re Pester Refining Co.)*, 964 F.2d 842, 849 (8th Cir. 1992); *Ocasek v. Manville Corp.*

*Asbestos Disease Compensation Fund*, 956 F.2d 152, 154 (7th Cir. 1992); *In re Endeavour Highrise,*

*L.P.*, 432 B.R. 583, 645–46 (Bankr. S.D. Tex. 2010).  Postjudgment interest on Tow's damages

award should have been calculated at the federal rate.  *See Travelers Ins. Co. v. Liljeberg Enters.,*

*Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993) ("[A] court with diversity jurisdiction awards prejudgment

interest according to state law, . . . but calculates postjudgment interest according to the federal

rate."); *Harris v. Mickel*, 15 F.3d 428, 431 n.4 (5th Cir. 1994) (finding that federal law applies in a

diversity action to determine postjudgment interest because the federal statutory rate is procedural

in nature).  The court vacates its award of postjudgment interest at the Texas rate and instead awards

postjudgment interest at the Federal Reserve System prime rate.

Based on this analysis, Tow's motion for new trial is denied, except that the award for

postjudgment interest based on the state rate is vacated and postjudgment interest is instead awarded

using the federal rate.

II.     **Tow's Supplemental Motion for Attorneys' Fees**

A.      **The Legal Standard for Fee Awards**

TUFTA permits a court to award "costs and reasonable attorney's fees as are equitable and just." TEX. BUS. & COM. CODE § 24.013.  A court must examine whether the fees sought are reasonable and necessary.  A contingency-fee agreement specifying a percentage-of-recovery formula does not in itself show that the fees sought are reasonable.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) ("[W]e cannot agree that the mere fact that a party and a lawyer have agreed to a contingent fee means that the fee arrangement is in and of itself reasonable for purposes of shifting that fee to the defendant.").

Texas courts and federal courts in the Fifth Circuit generally use the lodestar method for calculating attorneys' fees.  *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *see also Guity v. C.C.I. Enter.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("In determining the reasonableness of attorney's fees, the fact finder must be guided by a specific standard.  This standard is substantially similar under both federal law and state law.").  The first lodestar step is to determine the reasonable hourly rate for the attorneys and other professionals who worked on the case.  The reasonable hourly rate is based on "the prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The second step is to determine the number of hours "reasonably expended."  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008).

When a plaintiff seeks attorneys' fees in a case involving multiple claims, at least one of which supports a fee award and at least one of which does not, the plaintiff must offer evidence

segregating the hours worked between these claims. *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–14 (Tex. 2006). No duty to segregate arises when discrete legal services advance both a recoverable and unrecoverable claim, so intertwined that the time spent and fees incurred cannot be segregated. *Chapa*, 212 S.W.3d at 313–14. The party seeking to invoke this exception to the duty to segregate has the burden of demonstrating that it applies. *Gallagher Headquarters Ranch Dev., Ltd. v. City of San Antonio*, 269 S.W.3d 628, 642 (Tex. App.—San Antonio 2008, pet. granted, judgm't vacated by agr.) (citing *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). When legal services for intertwined claims are at issue, the fee applicant should estimate what percentage of the time spent would have been necessary without the claims that did not support a fee award. *Chapa*, 212 S.W.3d at 314.

Another consideration in determining reasonableness is whether the lawyers exercised billing judgment in charging their time. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.*; *see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002). District courts should reduce attorneys' fee awards so as to exclude "unproductive, excessive, or redundant hours." *Walker v. United States Dep't of Hous. and Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). Courts may use "a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous." *Compass Bank v. 288/59 GP LLC*, No. Civ. A. H-09-4099, 2011

WL 739341, at *2 (S.D. Tex. Feb. 23, 2011) (quoting *Project Vote v. Blackwell*, 2009 WL 917737

*6 (N.D. Ohio 2009)); *see also Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("Where

fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of

judicial resources."). Fee applicants have the burden of establishing the appropriate hours. *Saizan*,

448 F.3d at 799.

Another consideration is whether the hours claimed yield a fee that is excessive compared

to the amount at stake or owed. *See Sibley v. RMA Partners, L.P.*, 138 S.W.3d 455, 459 (Tex.

App.—Beaumont 2004, no pet.). "Attorney's fees must bear some reasonable relationship to the

amount in controversy." *Cordova v. Southwestern Bell Yellow Pages*, 148 S.W.3d 441, 448 (Tex.

App.—El Paso 2004, no pet.) (citing *Rep. Nat'l Life Ins. Co. v. Heyward*, 568 S.W.2d 879 (Tex.

App.—Eastland 1978, writ ref'd n.r.e.)). Texas law does not require precise proportionality between

the fees awarded and either the original amount in controversy or the relief obtained.

"[D]isproportion alone does not render the award of attorneys' fees excessive." *Northwinds*

*Abatement, Inc. v. Emp'rs Ins. of Wausau*, 258 F.3d 345, 355 (5th Cir. 2001) (affirming $712,000

in attorneys' fees on recovery of $74,570 in actual damages on various state statutory and common-

law claims); *see also Quanta Serv's Inc. v. Am. Admin. Grp. Inc.*, 384 F. App'x 291, 298 (5th Cir.

2008) (affirming $116,767.68 in attorneys' fees for $100,000 damages awarded in a contract suit).

After the court determines the reasonable hourly rates for the legal services provided and the

number of hours reasonably expended, it multiplies the number of hours by the hourly rates to

determine the lodestar. *Id.* The court then decides whether to increase or decrease the lodestar based

on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). The

twelve *Johnson* factors are (1) the time and labor involved, (2) the novelty and difficulty of the

questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to this case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717–19. Texas courts weigh similar factors under Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct to determine reasonable fees. *See Arthur Andersen & Co.*, 945 S.W.2d at 818; *Brazos Elec. Power Co-op., Inc. v. Weber*, 238 S.W.3d 582, 585–87 (Tex. App.—Dallas 2007, no pet.).

**B.    The Lodestar Calculation**

**1.    The Supplemented Fee Application**

In his supplemented fee application, Tow submitted his own declaration describing the complexity of the case; a declaration from Timothy Micah Dortch, a lead trial attorney with Cooper & Scully; a summary of the time billed for each lawyer and legal assistant; a 303-page spreadsheet itemizing the bills to show who performed the work, the time spent, and a brief description of that work; a spreadsheet summarizing the time billed by each timekeeper; and a spreadsheet of the itemized billing entries for significant tasks. (Docket Entry Nos. 413, 415). Tow's original motion sought $4,533,154.19. (Docket Entry No. 398). In his reply to Speer's motion opposing fees, Tow reduced the amount to $4,290,600.42. (Docket Entry No. 406). Tow's supplemented motion states that the reasonable fees are $4,669,731.50, but he seeks only $3,969,271.78 based on his agreement to a 15 percent reduction for time spent on claims that do not support a fee award. (Docket Entry No. 413, Dortch Declaration at p. 3).

### 2.    The Reasonableness of the Hourly Rate Charged

In the March 10, 2015 Memorandum and Opinion, the court concluded that a reasonable hourly rate for the type of legal work involved in this case in the relevant legal communities—Houston and Dallas—was $350.00 for attorneys with seven or more years of experience and $200.00 for attorneys with less than seven years of experience. (Docket Entry No. 412). The court also concluded that $100.00 was a reasonable hourly rate for legal assistants. (*Id.*). These conclusions are not challenged.

### 3.    The Number of Hours Reasonably Expended

The documents provided with the supplemented fee motion claim that Tow's attorneys spent 14,475.3 hours working on this case. Tow provided the following breakdown:

| Timekeeper | Hours |
| --- | --- |
| Donna B. Botello | 497.1 |
| Kyle Burke | 8.8 |
| CG Total | 0.4 |
| Elliott T. Cooper | 7.9 |
| R. Brent Cooper | 490.4 |
| Timothy Micah Dortch | 889.9 |
| Mike Duncan | 4,249.35 |
| Diana L. Faust | 70.7 |
| Eric W. Hines | 6.4 |
| Joe Hill | 61.4 |
| Erin Jones | 2,305.8 |
| Julie Koenig | 568.13 |
| KM | 0.5 |
| Chris D. Lindstrom | 818.2 |
| Charles Murnane | 310 |
| Michelle E. Robberson | 2.5 |
| Maryssa Simpson | 53 |
| Lauren C. Tow | 233.4 |
| Rodney Tow | 3,100.69 |
| Luisa Ulluela | 272 |
| Linda M. Wariner | 22.2 |
| Shirley Ziegler | 474.97 |

The hours listed on the spreadsheet appear to add up to 14,443.74, not the 14,475.3 Tow calculated.  The hours for which fees are sought include 0.9 hours for two people not previously mentioned: "KM" and "CG Total." "KM" billed his or her time at $350.00 per hour, and "CG Total" at $200.00 per hour.  The spreadsheet shows that "CG" made copies for a hearing and scanned and e-mailed documents.  (Docket Entry No. 413, Ex. B, at pp. 21, 24).  "KM" billed 30 minutes for "[l]ocat[ing] relevant sections in the Federal Rules pertaining to Temporary Restraining Orders and Injunctive Relief." (*Id.* at p. 110).  Because Tow did not provide sufficient information on these timekeepers' backgrounds and qualifications, or show that the CG's time spent was on legal as opposed to clerical work, the hours they billed are excluded from the fee award.

Other claimed hours are excessive, redundant, or noncompensable.  They are identified and analyzed below.

### a.      **Duplicative Entries**

The number of law firms involved in this case raises the concern that some of the work was duplicative.  "Work that is duplicative of the efforts of lead counsel—*e.g.*, where non-lead counsel is merely monitoring appointed lead counsel's representation . . . , or where multiple firms, in their efforts to become lead counsel, filed complaints and otherwise prosecuted the early stages of litigation—will not normally be compensated." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 191 (3d Cir. 2005); *see, e.g.*, *Preston Exploration Co., LP v. GSP, LLC*, No. Civ. A. H-08-3341, 2013 WL 3229678, at *9 (S.D. Tex. June 25, 2013) (reducing fees because multiple firms performed work that could have been more efficiently handled by a single firm); *Peak Technical Servs., Inc. v. Land & Sea Eng'g*, LLC, No. Civ. A. H-10-1568, 2012 WL 3234203, at *7 (S.D. Tex. Aug. 6, 2012) (reducing fees due to duplication because two law firms worked on the case and some of the hours

billed were solely attributable to coordination efforts between the firms).

A number of billing entries show overlapping work done by lawyers at Tow & Koenig, Jones Morris Klevenhagen, Cage, Hill & Niehaus, and Cooper & Scully during the same period. For example, lawyers from multiple firms attended the hearings on the motions to dismiss, the 2004 examination of Speer, the deposition of Scott Bayley, and the *Daubert* hearings. (Docket Entry No. 413, Ex. C). The records also show that multiple lawyers often worked on the same tasks. Four or more lawyers, including from a single firm, attended most of the hearings, mediations, and depositions. And some of the entries appear to be duplicates. For example, on June 4, 2014, Dortch billed two entries of 12.2 hours each for "Prepare for and attend trial," which appears to be 24.2 hours billed in one day. (Docket Entry No. 413, Ex. B, at p. 301).

A 5 percent reduction is necessary to account for the entries showing duplicative, overlapping, or excessive work.

### b.    Noncompensable Entries

The record also shows time billed for noncompensable tasks. At a minimum, attorneys may not charge their standard hourly rates for purely clerical or secretarial tasks. *See Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 535 (5th Cir. 1986) ("It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such nonlegal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.").[1] Most courts hold that "[c]lerical work is not recoverable

---

[1] No single test determines whether a task is legal or clerical. Courts often use nonexhaustive lists of tasks qualifying as clerical. *Compare Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989) (holding that a full fee for less sophisticated legal tasks, including: "factual investigation . . . assistance with depositions,

in an award of attorneys' fees." *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014) (citing *Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001)); *see also Lewallen v. City of Beaumont*, No. Civ. A. 1:05-CV-733TH, 2009 WL 2175637, at *7 (E.D. Tex. July 20, 2009), *aff'd*, 394 F. App'x 38 (5th Cir. 2010) (subtracting the number of clerical hours two attorneys worked from the total number of hours submitted). The Fifth Circuit has not expressly held this, but in *Vela*, 276 F.3d at 681, the court prohibited a fee recovery for clerical work legal assistants did. *Id.* ("Paralegal work can only be recovered as attorneys' fees if the work is legal rather than clerical." (citing *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982))). The Fifth Circuit has also stated that the value of nonlegal work "is not enhanced just because a lawyer does it." *Johnson*, 488 F.2d at 717, *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989) (overruling the Fifth Circuit's ceiling approach to contingency fees, but not overruling the holding stated above). The approach in this circuit is that neither attorneys nor legal assistants may recover a fee award for clerical work. *See Black*, 2014 WL 3534991, at *6; *see also Lewallen*, 2009 WL 2175637, at *7.

The billing records show that both legal assistants and lawyers billed substantial time for work that is described as clerical. This work includes "Index boxes and review documents,"

---

interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence" is appropriate), *with Walker*, 99 F.3d at 771 (holding that "responding to requests . . . for information, . . . gathering information, . . . interviewing class members, investigating complaints, and developing a coherent picture" were clerical tasks); *see also Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014) ("[H]ours spent drafting cover letters to the court, calendaring deadlines, filing appearance forms, ordering transcripts, reorganizing case materials, and filing notices of address change are not compensable because they are clerical in nature."); *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *8 (N.D. Tex. Feb. 11, 2011) (holding that "preparing exhibits, serving and filing proofs of service, organizing files, faxing drafts, telephone conferences with an assistant, organizing research, telephone conferences with chambers regarding status, and emailing comments to co-counsel about the court's opinion" were noncompensable clerical tasks).

"WORK ON SPREADSHEETS," "WORK ON VISION AND SPREADSHEETS," "Prepare filing," "WORK ON CHART," "Prepare copies," "PREPARED MAIL OUT FOR DOC NO. 450 & 451," "Work on resolving filing issue related to problem with ECF filing outage," "SCANNING PRODUCTION FROM CAPITAL ONE," "Conference with staff on organizing documents," "WORK ON NOTEBOOKS," and hundreds of hours billed for preparing PowerPoint presentations. This work cannot be included in a fee award.

A 5 percent reduction is necessary to account for clerical work lawyers and legal assistants billed on this case.

Other entries cannot be included in the fee award because they do not appear to relate to this case. *See, e.g., Baker Botts LLP v. ASARCO LLC*, 135 S. Ct. 2158 (2015). These entries include "WORK TO LEARN VISIO" and "ATTEND MEETING RE: USE OF SOFTWARE." (Docket Entry No. 413, Ex. B at pp. 3). Chris Lindstrom also billed time for attending a hearing "to approve fees in Bankruptcy Court." These entries, representing 0.7 hours for Lindstrom and 20 hours for Tow, are not properly included in the fee award.

Finally, many of the time entries are vague. They do not provide information necessary for the court to determine whether the time billed related to recoverable legal services performed on this case. These entries include "WORK ON EMAILS," "Attend meeting," "WORK ON THE CASE," "Prepare filing," "WORK WITH MIKE AND ERIN," "Preparation for meeting of counsel," "MEETING WITH MIKE, ERIN AND JULIE REGARDING GETTING ORGANIZED," and "WORK AT HOME ON ROYCE."

A 5 percent reduction is necessary to account for the entries containing insufficient information. *See Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456,

at *11 (N.D. Tex. Dec. 20, 2005), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007) (disallowing fees for "vague entries, such as 'review file,' 'preparation of correspondence,' 'review correspondence,' 'phone conference with co-counsel,' 'legal research,' and 'review email'").

### c.   The Failure to Segregate

The party seeking fees must segregate the time spent on claims for which fees may be recovered from the time spent on claims for which fees cannot be recovered. *See Chapa*, 212 S.W.3d at 299. The failure to segregate fees attributable to successful claims from those attributable to unsuccessful claims does not preclude an award, but it does require a reduction. *See TransAmerica Inv. Grp., Inc. v. Hamilton*, No. Civ. A. H-12-1102, 2014 WL 3867687, at *5 (S.D. Tex. Aug. 6, 2014).

Tow has deducted 15 percent from his requested fee award for time spent working on claims that were unsuccessful and on which he cannot recover fees. (Docket Entry No. 415, Dortch Declaration at p. 3). Dortch also stated that some entries had already been excluded from the fee request because they related to work for which fees are unavailable. Tow's reductions demonstrate billing judgment. But, as Speer argues, the billing records in Tow's supplemented motion still include many hundreds of hours spent on nonrecoverable claims, beyond what a 15 percent reduction takes into account. (Docket Entry No. 405 at p. 11). For example, although Tow did not prevail on many of the issues raised in the motions for summary judgment, the supplemented fee application includes approximately $240,000 for time entries related to those motions. (Docket Entry No. 418 at p. 3). In his declaration, Dortch argues that the work on those motions was used in other ways, but neither his declaration nor other parts of the record describe or segregate the work that was reused from the work that was not. Nor has Dortch explained how the issues were so interrelated as to

justify seeking all the fees incurred in unsuccessfully opposing the defendants' summary judgment motions. Dortch's assertion that the lawyers reused all of the work is inconsistent with the fact that some of the claims and parties were entirely eliminated at summary judgment. There is no basis to conclude that Tow reused work done unsuccessfully opposing summary judgment on issues eliminated from the case at the summary judgment stage.

Tow's supplemented fee application similarly fails to segregate between work relating to claims asserted against defendants initially named in this case and later eliminated, as opposed to the work done to defend the claims against Speer, who remained in the case. Tow does not explain why fees billed for work on claims against other defendants, some of whom were eliminated from the case early on, were reasonable and necessary to defend the claims against Speer. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex.1991) (if some defendants settle, the remaining defendants may not be assessed fees attributable to the settling defendants); *Top Pearl, Ltd. v. Cosa Freight, Inc.*, No. Civ. A. H-10-1249, 2013 WL 5575878, at *3 (S.D. Tex. Oct. 9, 2013), *amended*, 2013 WL 5771195 (S.D. Tex. Oct. 24, 2013) ("A party seeking attorney's fees not only has a duty to segregate nonrecoverable fees from recoverable fees, but it also must segregate the fees owed by different parties.").

The court concludes that an additional reduction of 5 percent is necessary to account for the failure to segregate work for nonrecoverable claims. *See Kimberley Clark Corp. v. Factory Mut. Ins. Co.*, No. 3:05-cv-2097, 2008 WL 1958998, at *4 (N.D. Tex. April 30, 2008) (reducing fees due to the failure to segregate and reasoning that it was likely that the nonrecoverable work done on the noncontractual claims was more time-consuming and had little overlap with work done on the contractual claims).

Applying all of these reductions, the court concludes that the lawyers and legal assistants reasonably spent the number of hours set out below on the claims on which Tow prevailed in this case:

| Timekeeper | Hours |
|---|---|
| Donna B. Botello | 323.12 |
| Kyle Burke | 5.72 |
| CG Total | 0 |
| Elliott T. Cooper | 5.14 |
| R. Brent Cooper | 318.76 |
| Timothy Micah Dortch | 578.44 |
| Mike Duncan | 2,762.08 |
| Diana L. Faust | 45.95 |
| Eric W. Hines | 4.16 |
| Joe Hill | 39.91 |
| Erin Jones | 1,498.77 |
| Julie Koenig | 369.28 |
| KM | 0 |
| Chris D. Lindstrom | 531.38 |
| Charles Murnane | 201.5 |
| Michelle E. Robberson | 1.63 |
| Maryssa Simpson | 34.45 |
| Lauren C. Tow | 151.71 |
| Rodney Tow | 2,002.45 |
| Luisa Ulluela | 176.8 |
| Linda M. Wariner | 14.43 |
| Shirley Ziegler | 308.73 |

## C.    Adjusting the Lodestar

Multiplying the reasonable hourly rates by the number of hours reasonably spent working on the case results in a revised lodestar amount of $3,023,449.98. The issues presented by this case were complex. The scope of the issues, the length of the proceedings, and the requisite skill of the attorneys all contributed to, and justify, the amount billed. Tow obtained significant recoveries for the bankruptcy estate through jury trials and settlements. The amount of time spent on this case precluded many of the attorneys and legal assistants from working on other cases. And the attorneys

worked on a contingency-fee basis, increasing the financial risk to them and their firms.

That said, the scope and complexity of the issues presented did not justify all of the amounts sought. The billing records Tow submitted showed many duplicative, excessive, or inadequately described entries. The reductions made to the hours reasonably expended already account for these deficiencies. No further reduction is necessary.

The lodestar amount results in a fee award of $3,023,449.98. This amount is within the range suggested by other cases and adequately reflects the twelve *Johnson* factors.[2]

## III.    Conclusion

Speer's motion for new trial is denied, except that the postjudgment interest award calculated using the Texas rate is vacated, to be replaced by postjudgment interest calculated at the Federal Reserve system rate. Tow is awarded $3,023,449.98 for his reasonable attorneys' fees.

SIGNED on August 17, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[2] The fee award is equal to 24.9 percent of the $12,129,006.90 money judgment awarded.